SIMS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-126-CR

FERMAN SIMS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

After a bench trial, the trial court convicted Appellant Ferman Sims of aggravated robbery with a deadly weapon and sentenced him to ten years’ confinement.  Counsel on appeal has filed an 
Anders
(footnote: 2) brief asserting that there are no grounds that would be arguably successful on appeal.  Sims has filed a pro se brief raising six issues.  We grant counsel’s motion to withdraw, overrule Sims’s issues, and affirm the trial court’s judgment.

II.  Factual Background

On July 29, 2003, asset protection employees at a Super Target in Fort Worth observed a female customer place a large quantity of DVDs in her shopping cart and cover them with apparel items from the store.  Based on the customer’s suspicious behavior, employees initiated both video and live surveillance.  About ten minutes later, the lady proceeded to meet with a male customer—identified at trial as Sims—who looked through the items in her basket, selected six of the DVDs (worth approximately $400), and placed them in his own shopping cart.  Sims walked to another aisle with his cart where he removed the plastic packaging from the DVDs and placed them in a backpack. Target employees notified the Fort Worth Police Department that a crime was in progress.

The female customer, accompanied by four children, abandoned her shopping cart and exited the Target.  Sims proceeded to the clothing department where he stood for a few moments, observing the activity in the front lanes of the store.  Sims produced a walkie-talkie and briefly appeared to communicate with someone before walking to a check-out line.  At the check out, he picked up a soft drink, presented it for payment, and paid for it with cash.  The backpack, containing the six DVDs, had been placed at the bottom of his shopping cart, out of the cashier’s view; Sims did not pay for the DVDs.

After purchasing the drink, Sims retrieved the backpack from the shopping cart, passed all points of sale, and exited a first set of doors through the electronic article surveillance towers into a vestibule.  Michael Dodds, part of the asset protection team who had been watching Sims, approached Sims from behind and identified himself as security personnel, but Sims kept walking.  Dodds grabbed one of Sims’s arms, and Sims, with a knife in his hand, swung around, making a slashing or swinging motion at Dodd’s neck and facial area.  Dodds jumped backwards and released Sims, who exited the second set of doors, discarded the backpack, and ran until police and Target security detained him.  On the ground near Sims was the backpack and a knife in the locked open position.

Sims testified and admitted to stealing the DVDs, but rejected testimony from the State’s witnesses that he slashed at Dodds with a knife.  Instead, Sims testified that his walkie-talkie was in his hand when he spun around at Dodds.

III.  The 
Anders
 Brief

Sims’s court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion.  In the brief, counsel avers that, in his professional opinion, this appeal is frivolous.  Counsel’s brief and motion meet the requirements of 
Anders v. California
 by presenting a professional evaluation of the record and explaining why there are no arguable grounds for appeal.  
See Mays v. State
, 904 S.W.2d 920, 922-23 (Tex. App.—Fort Worth 1995, no pet.).  The State has not filed an appellate brief.

Once appellant’s court-appointed counsel files a motion to withdraw on the ground that the appeal is frivolous and fulfills the requirements of 
Anders
, we are obligated to undertake an independent examination of the record and to essentially rebrief the case for appellant to see if there is any arguable ground that may be raised on his behalf.  
See Stafford v. State
, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991).  We address Sims’s arguments first.

IV.  Sims’s Pro Se Brief

Sims’s sixty-two page pro se brief contains six issues complaining that the State failed to disclose evidence favorable to the defense, that the trial court acted arbitrarily when it ordered analysis to be performed on the Target security tapes, that Sims’s trial counsel was ineffective, that the State engaged in prosecutorial misconduct, and that the evidence supporting the trial court’s deadly weapon finding is legally and factually insufficient.

A.  Disclosure of Evidence Favorable to Defendant

In his first issue, Sims appears to argue that he was denied due process because the State failed to turn over evidence favorable to the defense, namely, the videotape footage.  The due process clause of the Fourteenth Amendment requires the State to disclose any information in its possession which is material to either guilt or punishment.  
Brady v. Maryland
, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963).  Defense counsel stated at trial that he received a full copy of the videotape security footage on December 30, 2003, almost two months before the trial on the merits began.  
Defense counsel later filed a motion to compel production of the original videotape, arguing that the videotape provided to him was a third generation tape and that forensic analysis could only be performed on the original tape.  The trial court subsequently granted the motion to compel production of the original videotape and, after trial on the merits began, continued further proceedings in order to give defense counsel additional time to view the original videotape and analyze it.  The defense rested after the trial reconvened nine days later.  
Accordingly, the State turned over a copy of the security footage, and defense counsel was given an opportunity to view the original and have it downloaded to be analyzed.  We fail to see how the State withheld exculpatory evidence, thus violating Sims’s due process rights.  We overrule Sims’s first issue.

B.  Security Tape Analysis

In his second issue, Sims appears to argue that the trial court abused its discretion by ordering that defense counsel be given an opportunity to view the original security footage on February 26, 2004, just two days after the trial court stated it would give counsel a week to have the video analyzed.  Sims also seems to contend that his due process rights were violated because the videotape was not professionally analyzed.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P.
 33.1(a)(2); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).  We cannot find where Sims raised this issue with the trial court.  Accordingly, he has failed to preserve this issue for appellate review.  
See
 
Tex. R. App. P.
 33.1(a)(1)(A).  We overrule Sims’s second issue.

C.  Ineffective Assistance of Counsel

In his third issue, Sims argues that he was denied the effective assistance of counsel at trial because his trial counsel failed to have the security footage professionally analyzed and was unprepared to properly cross-examine the State’s witnesses.  
We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that 
his
 counsel's performance was deficient; second, appellant must show the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064.

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id.
 at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 813. 

The second prong of 
Strickland
 requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Id.
 at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.

The clerk’s record reflects that defense counsel filed two motions for continuance, both arguing that additional time was needed to investigate the security footage from Target, and a motion to compel production of the original videotape, arguing that the videotape provided to him was a third generation tape and that forensic analysis could only be performed on the original tape. After trial on the merits began, the trial court subsequently granted the motion to compel production of the original videotape.  The trial court later resumed proceedings without defense counsel providing an explanation as to why the security footage had not been professionally analyzed.  Accordingly, Sims’s argument that his trial counsel was ineffective for failing to have the videotape professionally analyzed is not firmly founded in the record, and the record does not affirmatively demonstrate any alleged ineffectiveness.  Thus, Sims has failed to rebut the presumption that his trial counsel provided effective assistance.  
See Thompson
, 9 S.W.3d at 814.

Sims’s argument that his trial counsel was unprepared to cross-examine the State’s witnesses also fails.  Defense counsel cross-examined each of the State’s witnesses, asking detailed questions probing the witnesses’ memories and versions of events.  A trial strategy (that Sims did not slash at Dodds with a knife) also became apparent through defense counsel’s questioning of the State’s witnesses.  Accordingly, counsel’s cross-examination of the State’s witnesses did not constitute deficient performance under 
Strickland’s
 first prong
.  We overrule Sims’s third issue.

D.  Prosecutorial Misconduct

In his fourth issue, Sims appears to argue that the State engaged in prosecutorial misconduct because it knowingly elicited perjured testimony from its witnesses.  A prosecutor’s knowing use of perjured testimony violates a defendant’s due process rights.  
Ex parte Castellano
, 863 S.W.2d 476, 481 (Tex. Crim. App. 1993).  An allegation of perjury must be supported in the record.  
See Hawkins v. State
, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983).

Sims attempts to show inconsistencies in the record by citing large portions of the testimony from trial.  However, there is nothing in the record to show that the State’s witnesses gave perjured testimony or that the State knew of such testimony and conspired to present it.  Sims’s argument is completely without merit.  Accordingly, we overrule Sims’s fourth issue.

E.  Legal and Factual Sufficiency—Deadly Weapon Finding

In his fifth and sixth issues, Sims argues that the evidence is legally and factually insufficient to support the trial court’s finding that he used or exhibited a deadly weapon during the commission of the offense because three witnesses testified that they did not see a knife in his possession at the time of the incident, questions abound regarding the discovery of the knife, and the video footage from the security cameras conflicts with the testimony of the State’s witnesses.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the judgment 
in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).
  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  We must resolve any inconsistencies in the evidence in favor of the judgment.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  A proper factual sufficiency review requires an examination of all the evidence.  
Zuniga, 
144 S.W.3d at 484, 486-87.

A robbery may become aggravated if the defendant uses or exhibits a deadly weapon.  
Tex. Penal Code Ann.
 § 29.03(a)(2) (Vernon 2003).  A knife is not a deadly weapon per se, and if the knife was not used to cause death or serious bodily injury, the State must prove that the use of the knife or its intended use was capable of causing serious bodily injury or death.  
Russell v. State
, 804 S.W.2d 287, 290 (Tex. App.—Fort Worth 1991, no pet.).

Here, Dodds testified that Sims slashed at him with a knife after Dodds  grabbed Sims’s arm.  The knife passed between two and three inches of Dodds’s face and neck area, and Dodds testified that he would have been cut if he did not take evasive action.  Dodds further testified that he felt threatened and in fear of imminent bodily injury or death at that moment.  Both Dodds and Officer Kirk Byrum, who assisted in the apprehension of Sims, testified that the knife was capable of causing death or serious bodily injury. 

Sims’s arguments that the evidence is insufficient to support the trial court’s deadly weapon finding are without merit.  Although Officer Byrum, Mike Gazelka (part of the asset protection team at Target), and Andrea Rodriguez (the cashier who checked Sims out) did not see the knife in Sims’s hand, Dodds did.  Indeed, Dodds testified that the object Sims used to slash at him was not a walkie-talkie, a radio, or Sims’s fist; it was a knife.  Officer Byrum also testified that, based on his observations, the object that Sims used to slash at Dodds with could not have been a walkie-talkie.
(footnote: 3)
 Regarding the discovery of the knife, Gazelka observed the knife lying on the ground near the backpack that Sims had discarded before he was detained by police.  Officer Byrum testified that he and another officer noticed the knife lying on the ground near where Sims was apprehended just before a civilian picked up the knife and handed it to him.  The knife was turned over to Officer Scott Law, who marked and tagged it as evidence.  Dodds identified the knife at trial as the one used by Sims to slash at him.

Regarding the video footage, the record demonstrates that it does not show Sims slashing at Dodds due to the location of the cameras.  Moreover, although Sims testified that he had a walkie-talkie and not a knife in his hands at the time Dodds confronted him, the trial court, as the fact finder, was entitled to resolve this conflict in the evidence against him.  
Jones v. State
, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). 

We hold that the evidence is legally and factually sufficient to support the trial court’s finding that Sims used or exhibited a deadly weapon (a knife) during the commission of the offense or during the immediate flight therefrom.  Accordingly, 
we overrule Sims’s fifth and sixth issues.

V.  Independent Review

A.  Jurisdiction

Our review of the record reveals no jurisdictional defects.  The trial court had jurisdiction over the case.  
See
 
Tex. Code Crim. Proc. Ann.
 Art. 4.05 (Vernon 2005).  The indictment conferred jurisdiction on the trial court and provided Sims with sufficient notice to prepare a defense.  
See
 
Tex. Const.
 art. V, § 12; 
Duron v. State
, 956 S.W.2d 547, 550-51 (Tex. Crim. App. 1997).

B.  Sufficiency of the Evidence

We have previously recited the facts in detail above.  Considering the appropriate standards of review, we find that the evidence is legally and factually sufficient to support Sims’s conviction.  
See Jackson
, 443 U.S. at 319
; 
Zuniga
, 144 S.W.3d at 481.

C.  Punishment and Sentencing

Sims was the only witness to testify during punishment; no further evidence was offered before the trial court considered the parties’ arguments. The trial court convicted Sims of aggravated robbery with a deadly weapon, a first degree felony.  
Tex. Penal Code Ann.
 § 29.03(b).  “An individual adjudged guilty of a felony of the first degree shall be punished by imprisonment in the institutional division for life or for any term of not more than 99 years or less than 5 years.”  
Id
. § 12.32(a).  Accordingly, Sims’s ten year sentence is within the permissible statutory range of punishment.  
See Alvarez v. State
, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.) (stating that punishment assessed within the statutory limits is generally not excessive, cruel, or unusual punishment).  
Our review of the record reveals no reversible error from the punishment phase.

VI.  Conclusion

Based upon our independent review of this record, we have determined that there is no error on which an appeal could be based or which would require reversal of this case.  Therefore, we grant appellate counsel’s motion to withdraw, overrule Sims’s issues, and affirm the trial court’s judgment.

PER CURIAM

PANEL F: MCCOY, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
 October 6, 2005

FOOTNOTES
1:
See 
T
ex. R. App. P
. 47.4.

2:
Anders v. California
, 386 U.S. 738, 87 S. Ct. 1396 (1967).

3:
Officer Byrum testified that a walkie-talkie fell out of Sims’s pocket as officers lifted him up from the ground.  The following exchange then took place:

[Prosecutor]: In your opinion, Officer Byrum, is the object that this Defendant slashed at one of the loss prevention officers, could it have been the walkie-talkie that was in the Defendant’s pocket when he was - -

[Officer Byrum]: No, ma’am, it couldn’t.  The radio was in his pocket.  He didn’t have time to retrieve that radio or place it back into the pocket.  From the time he hit the doors, he was in a flailing motion, the backpack hit the ground.  In my opinion, being there at the scene, there was no way that he could have got that radio out of his pocket.