COURT
OF APPEALS

                  SECOND
DISTRICT OF TEXAS

                           FORT
WORTH

 

 

                                        NO.
2-04-126-CR

 

 

FERMAN SIMS                                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








After a bench trial, the
trial court convicted Appellant Ferman Sims of aggravated robbery with a deadly
weapon and sentenced him to ten years= confinement.  Counsel on appeal
has filed an Anders[2]
brief asserting that there are no grounds that would be arguably successful on
appeal.  Sims has filed a pro se brief
raising six issues.  We grant counsel=s motion to withdraw, overrule Sims=s issues, and affirm the trial court=s judgment.

II.  Factual Background

On July 29, 2003, asset
protection employees at a Super Target in Fort Worth observed a female customer
place a large quantity of DVDs in her shopping cart and cover them with apparel
items from the store.  Based on the
customer=s suspicious behavior, employees initiated both video and live
surveillance.  About ten minutes later,
the lady proceeded to meet with a male customerCidentified at trial as SimsCwho looked through the items in her basket, selected six of the DVDs
(worth approximately $400), and placed them in his own shopping cart.  Sims walked to another aisle with his cart
where he removed the plastic packaging from the DVDs and placed them in a
backpack. Target employees notified the Fort Worth Police Department that a
crime was in progress.








The female customer,
accompanied by four children, abandoned her shopping cart and exited the
Target.  Sims proceeded to the clothing
department where he stood for a few moments, observing the activity in the
front lanes of the store.  Sims produced
a walkie-talkie and briefly appeared to communicate with someone before walking
to a check-out line.  At the check out,
he picked up a soft drink, presented it for payment, and paid for it with
cash.  The backpack, containing the six
DVDs, had been placed at the bottom of his shopping cart, out of the cashier=s view; Sims did not pay for the DVDs.

After purchasing the drink,
Sims retrieved the backpack from the shopping cart, passed all points of sale,
and exited a first set of doors through the electronic article surveillance
towers into a vestibule.  Michael Dodds,
part of the asset protection team who had been watching Sims, approached Sims
from behind and identified himself as security personnel, but Sims kept
walking.  Dodds grabbed one of Sims=s arms, and Sims, with a knife in his hand, swung around, making a slashing
or swinging motion at Dodd=s neck and facial area.  Dodds
jumped backwards and released Sims, who exited the second set of doors,
discarded the backpack, and ran until police and Target security detained
him.  On the ground near Sims was the
backpack and a knife in the locked open position.

Sims testified and admitted
to stealing the DVDs, but rejected testimony from the State=s witnesses that he slashed at Dodds with a knife.  Instead, Sims testified that his
walkie-talkie was in his hand when he spun around at Dodds.

 

 








III.  The Anders Brief

Sims=s court-appointed appellate counsel has filed a motion to withdraw as
counsel and a brief in support of that motion. 
In the brief, counsel avers that, in his professional opinion, this
appeal is frivolous.  Counsel=s brief and motion meet the requirements of Anders v. California
by presenting a professional evaluation of the record and explaining why there
are no arguable grounds for appeal.  See
Mays v. State, 904 S.W.2d 920, 922-23 (Tex. App.CFort Worth 1995, no pet.).  The
State has not filed an appellate brief.

Once appellant=s court-appointed counsel files a motion to withdraw on the ground
that the appeal is frivolous and fulfills the requirements of Anders, we
are obligated to undertake an independent examination of the record and to
essentially rebrief the case for appellant to see if there is any arguable
ground that may be raised on his behalf. 
See Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim. App.
1991).  We address Sims=s arguments first.

IV.  Sims=s Pro Se Brief








Sims=s sixty-two page pro se brief contains six issues complaining that the
State failed to disclose evidence favorable to the defense, that the trial
court acted arbitrarily when it ordered analysis to be performed on the Target
security tapes, that Sims=s trial
counsel was ineffective, that the State engaged in prosecutorial misconduct,
and that the evidence supporting the trial court=s deadly weapon finding is legally and factually insufficient.

A.  Disclosure of Evidence
Favorable to Defendant

 








In his first issue, Sims
appears to argue that he was denied due process because the State failed to
turn over evidence favorable to the defense, namely, the videotape
footage.  The due process clause of the
Fourteenth Amendment requires the State to disclose any information in its
possession which is material to either guilt or punishment.  Brady v. Maryland, 373 U.S. 83, 87, 83
S. Ct. 1194, 1196-97 (1963).  Defense
counsel stated at trial that he received a full copy of the videotape security
footage on December 30, 2003, almost two months before the trial on the merits
began.  Defense counsel later filed a
motion to compel production of the original videotape, arguing that the videotape
provided to him was a third generation tape and that forensic analysis could
only be performed on the original tape. 
The trial court subsequently granted the motion to compel production of
the original videotape and, after trial on the merits began, continued further
proceedings in order to give defense counsel additional time to view the
original videotape and analyze it.  The
defense rested after the trial reconvened nine days later.  Accordingly, the State turned over a copy of
the security footage, and defense counsel was given an opportunity to view the
original and have it downloaded to be analyzed. 
We fail to see how the State withheld exculpatory evidence, thus
violating Sims=s due
process rights.  We overrule Sims=s first issue.

B.  Security Tape Analysis

In his second issue, Sims
appears to argue that the trial court abused its discretion by ordering that
defense counsel be given an opportunity to view the original security footage
on February 26, 2004, just two days after the trial court stated it would give
counsel a week to have the video analyzed. 
Sims also seems to contend that his due process rights were violated
because the videotape was not professionally analyzed.

To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(2); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  We cannot find where Sims raised this issue
with the trial court.  Accordingly, he
has failed to preserve this issue for appellate review.  See Tex.
R. App. P. 33.1(a)(1)(A).  We
overrule Sims=s second
issue.

C.  Ineffective Assistance of Counsel








In his third issue, Sims
argues that he was denied the effective assistance of counsel at trial because
his trial counsel failed to have the security footage professionally analyzed
and was unprepared to properly cross-examine the State=s witnesses.  We apply a
two-pronged test to ineffective assistance of counsel claims.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999).  First, appellant
must show that his counsel's performance was deficient; second, appellant must
show the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064.

In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether counsel's assistance was
reasonable under all the circumstances and prevailing professional norms at the
time of the alleged error.  See
Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065.  A[C]ounsel is strongly presumed to have rendered adequate assistance
and made all significant decisions in the exercise of reasonable professional
judgment.@  Id. at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must
be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness.  Thompson,
9 S.W.3d at 813. 








The second prong of Strickland
requires a showing that counsel's errors were so serious that they deprived the
defendant of a fair trial, i.e., a trial whose result is reliable.  Id. at 687, 104 S. Ct. at 2064.  In other words, appellant must show there is
a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.  Id. at 694, 104 S. Ct. at 2068.

The clerk=s record reflects that defense counsel filed two motions for
continuance, both arguing that additional time was needed to investigate the
security footage from Target, and a motion to compel production of the original
videotape, arguing that the videotape provided to him was a third generation
tape and that forensic analysis could only be performed on the original tape.
After trial on the merits began, the trial court subsequently granted the
motion to compel production of the original videotape.  The trial court later resumed proceedings
without defense counsel providing an explanation as to why the security footage
had not been professionally analyzed. 
Accordingly, Sims=s argument
that his trial counsel was ineffective for failing to have the videotape
professionally analyzed is not firmly founded in the record, and the record
does not affirmatively demonstrate any alleged ineffectiveness.  Thus, Sims has failed to rebut the
presumption that his trial counsel provided effective assistance.  See Thompson, 9 S.W.3d at 814.








Sims=s argument that his trial counsel was unprepared to cross-examine the
State=s witnesses also fails.  Defense
counsel cross-examined each of the State=s witnesses, asking detailed questions probing the witnesses= memories and versions of events. 
A trial strategy (that Sims did not slash at Dodds with a knife) also
became apparent through defense counsel=s questioning of the State=s witnesses.  Accordingly,
counsel=s cross-examination of the State=s witnesses did not constitute deficient performance under Strickland=s first prong.  We overrule Sims=s third issue.

D.  Prosecutorial Misconduct

 

In his fourth issue, Sims
appears to argue that the State engaged in prosecutorial misconduct because it
knowingly elicited perjured testimony from its witnesses.  A prosecutor=s knowing use of perjured testimony violates a defendant=s due process rights.  Ex
parte Castellano, 863 S.W.2d 476, 481 (Tex. Crim. App. 1993).  An allegation of perjury must be supported in
the record.  See Hawkins v. State,
660 S.W.2d 65, 75 (Tex. Crim. App. 1983).

Sims attempts to show
inconsistencies in the record by citing large portions of the testimony from
trial.  However, there is nothing in the
record to show that the State=s witnesses gave perjured testimony or that the State knew of such
testimony and conspired to present it. 
Sims=s argument
is completely without merit. 
Accordingly, we overrule Sims=s fourth issue.

 

 








E.  Legal and Factual SufficiencyCDeadly Weapon Finding

In his fifth and sixth
issues, Sims argues that the evidence is legally and factually insufficient to
support the trial court=s finding
that he used or exhibited a deadly weapon during the commission of the offense
because three witnesses testified that they did not see a knife in his
possession at the time of the incident, questions abound regarding the
discovery of the knife, and the video footage from the security cameras
conflicts with the testimony of the State=s witnesses.

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the judgment in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State,
133 S.W.3d 618, 620 (Tex. Crim. App. 2004). 
The trier of fact is the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App.
2000).  We must resolve any
inconsistencies in the evidence in favor of the judgment.  Curry v. State, 30 S.W.3d 394, 406
(Tex. Crim. App. 2000).








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment, weighing all of the evidence, the contrary evidence is so strong that
guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  In performing a factual sufficiency review,
we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  A proper factual sufficiency review requires
an examination of all the evidence.  Zuniga,
144 S.W.3d at 484, 486-87.








A robbery may become
aggravated if the defendant uses or exhibits a deadly weapon.  Tex.
Penal Code Ann. ' 29.03(a)(2)
(Vernon 2003).  A knife is not a deadly
weapon per se, and if the knife was not used to cause death or serious bodily
injury, the State must prove that the use of the knife or its intended use was
capable of causing serious bodily injury or death.  Russell v. State, 804 S.W.2d 287, 290
(Tex. App.CFort Worth
1991, no pet.).

Here, Dodds testified that
Sims slashed at him with a knife after Dodds 
grabbed Sims=s arm.  The knife passed between two and three inches
of Dodds=s face and neck area, and Dodds testified that he would have been cut
if he did not take evasive action.  Dodds
further testified that he felt threatened and in fear of imminent bodily injury
or death at that moment.  Both Dodds and
Officer Kirk Byrum, who assisted in the apprehension of Sims, testified that
the knife was capable of causing death or serious bodily injury. 

Sims=s arguments that the evidence is insufficient to support the trial
court=s deadly weapon finding are without merit.  Although Officer Byrum, Mike Gazelka (part of
the asset protection team at Target), and Andrea Rodriguez (the cashier who
checked Sims out) did not see the knife in Sims=s hand, Dodds did.  Indeed,
Dodds testified that the object Sims used to slash at him was not a
walkie-talkie, a radio, or Sims=s fist; it was a knife.  Officer
Byrum also testified that, based on his observations, the object that Sims used
to slash at Dodds with could not have been a walkie-talkie.[3]








Regarding the discovery of the
knife, Gazelka observed the knife lying on the ground near the backpack that
Sims had discarded before he was detained by police.  Officer Byrum testified that he and another
officer noticed the knife lying on the ground near where Sims was apprehended
just before a civilian picked up the knife and handed it to him.  The knife was turned over to Officer Scott
Law, who marked and tagged it as evidence. 
Dodds identified the knife at trial as the one used by Sims to slash at
him.

Regarding the video footage,
the record demonstrates that it does not show Sims slashing at Dodds due to the
location of the cameras.  Moreover,
although Sims testified that he had a walkie-talkie and not a knife in his
hands at the time Dodds confronted him, the trial court, as the fact finder,
was entitled to resolve this conflict in the evidence against him.  Jones v. State, 944 S.W.2d 642, 648
(Tex. Crim. App. 1996). 








We hold that the evidence is
legally and factually sufficient to support the trial court=s finding that Sims used or exhibited a deadly weapon (a knife) during
the commission of the offense or during the immediate flight therefrom.  Accordingly, we overrule Sims=s fifth and sixth issues.

V.  Independent Review

A.  Jurisdiction

Our review of the record
reveals no jurisdictional defects.  The
trial court had jurisdiction over the case. 
See Tex. Code Crim. Proc.
Ann. Art. 4.05 (Vernon 2005).  The
indictment conferred jurisdiction on the trial court and provided Sims with
sufficient notice to prepare a defense.  See
Tex. Const. art. V, ' 12; Duron v. State, 956 S.W.2d 547, 550-51 (Tex. Crim. App.
1997).

B.  Sufficiency of the Evidence

We have previously recited
the facts in detail above.  Considering
the appropriate standards of review, we find that the evidence is legally and
factually sufficient to support Sims=s conviction.  See Jackson,
443 U.S. at 319; Zuniga, 144 S.W.3d at 481.

C.  Punishment and Sentencing








Sims was the only witness to
testify during punishment; no further evidence was offered before the trial
court considered the parties= arguments. The trial court convicted Sims of aggravated robbery with
a deadly weapon, a first degree felony.  Tex. Penal Code Ann. ' 29.03(b).  AAn individual adjudged guilty of a felony of the first degree shall be
punished by imprisonment in the institutional division for life or for any term
of not more than 99 years or less than 5 years.@  Id. ' 12.32(a).  Accordingly, Sims=s ten year sentence is within the permissible statutory range of
punishment.  See Alvarez v. State,
63 S.W.3d 578, 580 (Tex. App.CFort Worth 2001, no pet.) (stating that punishment assessed within the
statutory limits is generally not excessive, cruel, or unusual
punishment).  Our review of the record
reveals no reversible error from the punishment phase.

VI.  Conclusion

Based upon our independent review of this record, we have determined
that there is no error on which an appeal could be based or which would require
reversal of this case.  Therefore, we
grant appellate counsel=s
motion to withdraw, overrule Sims=s issues, and affirm the
trial court=s
judgment.

 

 

PER CURIAM

 

PANEL F:    MCCOY, HOLMAN, and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
October 6, 2005











[1]See Tex. R. App. P. 47.4.





[2]Anders v. California, 386
U.S. 738, 87 S. Ct. 1396 (1967).





[3]Officer Byrum testified that a walkie-talkie fell out of
Sims=s pocket
as officers lifted him up from the ground. 
The following exchange then took place:

 

[Prosecutor]: In your opinion, Officer Byrum, is the object
that this Defendant slashed at one of the loss prevention officers, could it
have been the walkie-talkie that was in the Defendant=s pocket when he was - -

 

[Officer Byrum]: No, ma=am, it couldn=t.  The radio was in
his pocket.  He didn=t have time to retrieve that radio or place it back into the
pocket.  From the time he hit the doors,
he was in a flailing motion, the backpack hit the ground.  In my opinion, being there at the scene,
there was no way that he could have got that radio out of his pocket.