COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-07-287-CV

 

 

IN THE INTEREST OF 

J.C., JR. AND A.C.

 

                                              ------------

 

           FROM
THE 323RD DISTRICT
 COURT OF
 TARRANT
 COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellants Jessica and Joseph
C. appeal the termination of their parental rights to J.C., Jr. and A.C.  The trial court found that appellants
knowingly placed or knowingly allowed the children to remain in conditions or
surroundings which endangered their physical or emotional well-being, and
engaged in conduct or knowingly placed the children with persons who engaged in
conduct which endangered their physical or emotional well-being.[2]  The trial court further found that
termination of appellants= parental
rights is in the children=s best
interest.[3]  

In two issues, Jessica
contends that the evidence supporting the trial court=s findings is legally and factually insufficient.  Joseph=s court-appointed appellate counsel has filed a motion to withdraw and
a supporting brief presenting potential issues whether the evidence is legally
and factually sufficient, and whether trial counsel provided constitutionally
ineffective assistance.  We affirm.

STANDARDS
OF REVIEW FOR LEGAL AND FACTUAL SUFFICIENCY CHALLENGES IN TERMINATION CASES

 








In proceedings to terminate
the parent-child relationship, the State must establish one or more of the acts
or omissions enumerated under Texas Family Code section 161.001, and must also
prove that termination is in the best interest of the child.[4]  These elements must be established by clear
and convincing evidence,[5]
defined as the Ameasure or
degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.@[6]

In reviewing the evidence for
legal sufficiency in parental termination cases, we must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction that the grounds for termination were proven.[7]  We must review all the evidence in the light
most favorable to the finding and judgment.[8]   This means that we must assume that the
factfinder resolved any disputed facts in favor of its finding if a reasonable
factfinder could have done so.[9]  We must also disregard all evidence that a
reasonable factfinder could have disbelieved.[10]  We must consider, however, undisputed
evidence even if it is contrary to the finding.[11]









In reviewing the evidence for
factual sufficiency, we must give due deference to the factfinder=s findings and not supplant the factfinder=s judgment with our own.[12]  If, in light of the entire record, the
disputed evidence that a reasonable factfinder could not have credited in favor
of the finding is so significant that a factfinder could not reasonably have
formed a firm belief or conviction in the truth of its finding, then the
evidence is factually insufficient.[13]


SUFFICIENCY
OF THE EVIDENCE TO SUPPORT TERMINATING 

JESSICA=S
PARENTAL RIGHTS

 

The record shows the
following evidence was presented on the issue of whether Jessica=s rights should be terminated:

$                  
A.C. was born with cocaine in her system.  Jessica admitted to Department of Family and
Protective Services (DFPS)  investigator
Kristina Bates that she had used cocaine while pregnant, and she agreed to have
the children removed.  Thereafter,
Jessica completed intensive drug-addiction services and had the children
returned to her.  Several months after
their return, however, DFPS caseworker, Cathy Kurtin, twice requested that
Jessica and Joseph be drug tested but both failed to be tested.  Jessica later admitted to using cocaine again
and submitted to a drug test, the results of which showed habitual, almost
daily use rather than a single day=s relapse.  DFPS then removed the children a second time
and set up a new service plan.  Although
Jessica said she would do anything to get her children back, three subsequent drug
tests came back positive for cocaine use and Jessica admitted that she had
continued during the time of the new service plan to use illegal drugs.  She did, however, complete an inpatient drug
rehabilitation program shortly before trial began.

 








$                  
J.C., Jr. had emotional and speech
difficulties.  He began therapy sessions
with Kelley Spell, a licensed professional counselor, while in foster
care.  In their initial sessions, he
exhibited destructive tantrums, communication difficulties, and anxiety.  During his time in foster care, however,
Spell observed in him much improvement and increased comfort.  Psychologist Paul Cuppett first saw J.C., Jr.
when the boy was three years, three months old. 
Although he noted that J.C., Jr. had some difficulties with his speech
and emotions, Cuppett found that he was a bright boy with an average I.Q.  When he was removed from his parents for a
second time, J.C., Jr. was  returned to
the same foster parents.  Under their
care, he resumed his therapy with Spell. 
She noted that J.C., Jr. appeared to have regressed while living with
his parents to bedwetting and soiling his pants, which she testified indicated
frustration, anger, and  anxiety.  Dr. Cuppett also noted that J.C., Jr. had
regressed, appearing fearful and anxious and displaying much separation anxiety
from his foster mother.  He testified
that remaining with the foster parents was important for J.C., Jr.=s
long-term development.  He had concerns
about the child going back to appellants because of the neglect that stems from
drug abuse.

 

$                  
Kurtin visited the home after the children=s
return following Jessica=s
initial drug treatment.  Kurtin testified
that the small apartment was Avery very messy.@  In addition to the family, it housed two cats
and a pregnant pit-bull-like dog.  The
children=s
bedroom was Ain
disarray.@  And when Kurtin returned the next month,
there was no improvement:  food crumbs
littered the base of a coffee table and the animals were still there.  Kurtin told Jessica that she needed to pick
things up and get the place more organized. 
Months after her initial visit, Kurtin observed that the apartment was
worse than before: it smelled, dirty dishes were everywhere, the dog had given
birth to six puppies, cats had been on the stove eating out of a pot, and the
family did not seem to be Amaking it financially.@  Appellants= medicaid benefits had
lapsed, J.C. Jr. was not getting the therapy he needed, and the children=s
shots were not current.  The home
environment caused Kurtin concern for the children=s
safety. She returned to the apartment once more that month, and, although
things had Abeen
picked up some@Cdishes
were off the counter and three puppies were goneCit
still did not look like the family had moved in.  She recommended a homemaker service to help
with the cleaning, but appellants failed to participate.

 








$                  
Psychologist Nichelle Wiggins evaluated Jessica a
few days before trial.  The results of
her evaluation did not support returning the children to Jessica.  She noted that Jessica was physically and
emotionally addicted to cocaine, and that she continued using it despite
knowing the potential for very serious consequences.  Wiggins testified that Jessica needed
intensive treatment and was not in any position to parent effectively. Although
Jessica had gone through intensive treatment the year beforeCdoing
well enough to have the children returned after four to five monthsCshe  relapsed, which, according to Wiggins, placed
the children in a very difficult and confusing situation with a high risk of
developing emotional and behavioral issues. 

 








Having carefully considered
the evidence and applying the appropriate legal and factual sufficiency
standards of review, we hold that, on the entire record, the trial court could
have reasonably formed a firm belief or conviction that Jessica engaged in
conduct that endangered the children=s physical and emotional well-being and that caused the children to
remain in conditions or surroundings that endangered their physical or
emotional well-being.  Drug addiction and
its effect on a parent=s life and
ability to parent may establish an endangering course of conduct.[14]  Although Jessica sought treatment for her
addiction, the evidence shows that her addiction to cocaine was resistant to
treatment and had persisted despite more than a year of significant
intervention and programs aimed at addressing its control.  The trial court could have reasonably
inferred from her past drug use that similar conduct would recur if the
children were returned to her.[15]  We hold, therefore, the evidence legally and
factually sufficient to support the trial court=s endangerment findings under subsections (D) and (E).

In addition to one of the
statutory endangerment findings, the evidence must show that termination is in
the child=s best
interest.  There is a strong presumption
that keeping a child with a parent is in the child=s best interest.[16]  Prompt and permanent placement of the child
in a safe environment is also presumed to be in the child=s best interest.[17]  

Nonexclusive factors that the
trier of fact in a termination case may use in determining the best interest of
the child include:

(A)    the desires of the child;

 

(B)    the emotional and physical needs of the child now and in the
future;

 

(C)    the emotional and physical danger to the child now and in the
future;

 

(D)    the parental abilities of the individuals seeking custody; 

 








(E)    the programs available to assist these individuals to promote the
best interest of the child;

 

(F)     the plans for the child by these individuals or by the agency
seeking custody;

 

(G)    the stability of the home or proposed placement;

 

(H)    the acts or omissions of the parent which may indicate that the
existing parent‑child relationship is not a proper one; and

 

(I)     any excuse for the acts
or omissions of the parent.[18]

These factors are not exhaustive; some may not
apply to some cases; other factors not on the list may also be considered when
appropriate.[19]  Furthermore, undisputed evidence of just one
factor may be sufficient in a particular case to support a finding that
termination is in the best interest of the child.[20]  On the other hand, the presence of scant
evidence relevant to each factor will not support such a finding.[21]  In this case, a number of these factors weigh
in favor of termination as being in the children=s best interest.








A.     Desires of the Child

Given their
ages, it is difficult to determine with any precision the children=s desires.  At the time of
trial, A.C. was one year old and J.C., Jr. was four.  But there is evidence that they were doing
well with the foster family. Kurtin testified that A.C. was doing Avery well,@ and Spell
testified that J.C., Jr. had Abuilt a rapport@ with the
foster parents and felt comfortable speaking to them.  In addition, both the court-appointed child
advocate and the children=s ad litem
recommended terminating appellants= parental rights.

B.     The
Children=s Present
and Future Emotional and Physical Needs 








There was evidence that the
foster family could better provide for the children=s present and future emotional and physical needs than appellants could.  The evidence was undisputed that Jessica was
emotionally and physically addicted to cocaine. 
A.C. was born with cocaine in her system because her mother used the
drug during her pregnancy, including the day before A.C. was born.  Cuppett testified that children whose parents
abuse drugs often suffer from neglect. 
In appellants= custody,
the children=s medicaid
benefits had lapsed, and their shots were not current.  Cuppett testified that they were at risk of
developing emotional issues often seen with neglect that stems from a parent=s use of illegal drugs.  In
foster care, on the other hand, A.C. was doing Avery well.@  She had medical needs such as ear infections,
fever, and a possible virus, all of which the foster parents had appropriately
attended to.  With appellants, J.C., Jr.
did not consistently receive the therapy he needed and had regressed after
being returned to their care.  In
contrast, with the foster parents, he was able to resume therapy and receive
the stability he very much needed.  He
had become very attached to his foster parents and felt safe with them.  

C.     Parental
abilities 

The psychologist who
evaluated Jessica testified that she would not be able to effectively parent
because of her drug addiction, which had persisted despite significant
intervention.  On the other hand, there
was evidence that the foster family C a minister and stay at home momCcould provide the security and stability that the children
needed.  

D. Stability








Spell testified to the
importance of stability for the children as soon as possible.  J.C., Jr., especially, was described as
emotionally fragile.  The evidence showed
that his need for stability was paramount. The record showed that appellants,
addicted to illegal drugs and continuing to use them up to shortly before
trial, could not provide that stability. 
Spell testified that the foster family was providing stability and that
J.C., Jr.=s attachment
to them was the only consistent thing in his life.  Cuppett testified that frequent moves for
children play a dramatic role in their development.  He believed that remaining with the foster
parents was important for the children=s long-term development, and he voiced concerns about them going back
to appellants because of the neglect that stems from drug abuse.

After carefully considering
the evidence in light of these factors and applying the appropriate legal and
factual sufficiency standards of review, we hold that the trial court could
have reasonably formed a firm belief or conviction that termination was in the
children=s best interest and that the evidence is legally and factually
sufficient to support that finding.[22]  We overrule Jessica=s issues.

JOSEPH=S FRIVOLOUS APPEAL








Joseph=s court-appointed appellate counsel 
has filed a motion to withdraw as counsel and a brief in support of that
motion, stating that he has reviewed the record and can find no non-frivolous
grounds for appeal.  In accordance with Anders
v. California,[23]
counsel presents as potential issues for review whether the evidence was
factually and legally sufficient to support termination of Joseph=s parental rights[24]
and whether trial counsel provided constitutionally effective
representation.  We have held that Anders
procedures apply in parental termination cases.[25]  In our duties as a reviewing court, we must
conduct an independent evaluation of the record to decide whether counsel is
correct in determining that the appeal is frivolous.[26]  Only then may we grant counsel=s motion to withdraw.[27]








        The evidence we found legally and
factually sufficient to sustain the trial court=s endangerment and best interest findings as to Jessica applies
equally to Joseph.  He was addicted to
cocaine and admitted to having a long history of drug use in New
 York and in Texas.  He had a pattern of refraining from drugs for
short periods when he perceived dire consequences only to fall inevitably back
into use.  For example, he resisted using
drugs shortly during the first removal in 2006, but then admitted using cocaine
the following New Year=s Eve.  As with Jessica, when Joseph finally
submitted to a drug test after the new year, the extremely high results
indicated habitual, almost daily use.         In addition to his drug use, other
evidence supports the trial court=s termination of Joseph=s parental rights.  Several
months after A.C. was born, Joseph was arrested and charged with four counts of
felony identity theft.  He was convicted
and sentenced to two years= confinement in state jail probated for five years.  On the day set for trial on the termination
of his parental rights, he was arrested for violating the conditions of his
probation.

For these reasons, we find no
merit in the potential issue whether the evidence is legally and factually
sufficient to support terminating Joseph=s parental rights.

Joseph=s appellate counsel also presents as a potential issue whether trial
counsel was ineffective for failing to object to certain scientific evidence
and for failing to preserve sufficiency claims for review by not filing a
motion for new trial.  








There is a right to effective
assistance of counsel in termination cases.[28]  We review ineffective assistance claims under
the Strickland standard.[29]  To establish ineffective assistance of
counsel, appellant must show by a preponderance of the evidence that his
counsel=s representation fell below the standard of prevailing professional
norms and that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.[30]








In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case.[31]  The issue is whether counsel=s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.[32]  Review of counsel=s representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel=s conduct fell within a wide range of reasonable representation.[33]


The second prong of Strickland
requires a showing that counsel=s errors were so serious that they deprived the defendant of a fair
trial, i.e., a trial with a reliable result.[34]  In other words, appellant must show there is
a reasonable probability that, but for counsel=s unprofessional errors, the result of the proceeding would have been
different.[35]  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.[36]  The ultimate focus of our inquiry must be on
the fundamental fairness of the proceeding in which the result is being
challenged.[37]








In support of his potential
issue that trial counsel may have been ineffective, appellate counsel notes
that trial counsel failed to preserve a sufficiency claim by not pursuing a
motion for new trial.  Texas Rule of
Appellate Procedure 33.1(d) provides that a motion for new trial is not necessary
to preserve a sufficiency claim from a bench trial.[38]  The potential issue whether trial counsel was
ineffective for not preserving appellant=s sufficiency claims fails, therefore, under Strickland=s first prong.[39]


Appellate counsel also posits
in his brief that trial counsel may have been ineffective for failing to object
to DFPS caseworker Kurtin=s testimony
that scientific tests performed on Joseph showed that he used cocaine
habitually rather than just once. 
Counsel then surmises that Agiven that both parents at various stages before and after the testing
admitted to drug usage, and given that both testified later in the hearing that
they were using cocaine, the failure to object, although deficient by the Strickland
guidelines, is ultimately cured by party admissions.@  While we do not decide whether
counsel=s actions were deficient under the first prong of Strickland or
that they were cured by party admissions, we agree with counsel that, viewed in
its totality, counsel=s failure to
object to this evidence would not have affected the outcome.[40]  Therefore, we overrule Joseph=s potential issue number two.  








Having carefully reviewed the
record and the appellate briefs, we agree with Joseph=s appellate counsel that his appeal is frivolous and without
merit.  We find nothing in the record
that might arguably support the appeal.[41]

CONCLUSION

Having found the evidence
legally and factually sufficient to support the trial court=s order terminating Jessica=s parental rights and having held Joseph=s appeal frivolous, we grant Joseph=s appellate counsel=s motion to withdraw and affirm the trial court=s termination orders. 

 

PER CURIAM

 

PANEL:  CAYCE, C.J.; WALKER and MCCOY, JJ.

 

DELIVERED:   January 22, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Fam. Code Ann. ' 161.001(1)(D) & (E) (Vernon Supp. 2008).





[3]See Id. '
161.001(2).





[4]Id. ' 161.001(1) & (2); In
re J.L., 163 S.W.3d 79, 84 (Tex.
2005).





[5]Tex. Fam. Code Ann. '
161.001 (Vernon
Supp. 2008); J.L., 163 S.W.3d at 84.





[6]Tex. Fam.
Code Ann. '
101.007 (Vernon 2002).





[7]In re
J.P.B., 180 S.W.3d 570, 573 (Tex.
2005).





[8]Id.





[9]Id.





[10]Id.





[11]Id.





[12]In re
H.R.M., 209 S.W.3d 105, 108 (Tex.
2006).





[13]Id.





[14]In re
U.P., 105 S.W.3d 222, 234 (Tex. App.CHouston [14th Dist.] 2003,
pet. denied).





[15]See
In re J.D.B., No. 02-06-00451-CV, 2007 WL 2216612, at *3 (Tex. App.CFort
Worth Aug. 2, 2007, no pet.)(mem. op.); In re C.S.C., No.
02-06-00254-CV, 2006 WL 3438185, at *7 (Tex.
App.CFort
Worth Nov. 30, 2006, no pet.) (mem.op.)





[16]In re
R.R., 209 S.W.3d 112, 116 (Tex.
2006).





[17]Tex. Fam.
Code Ann. '
263.307(a) (Vernon 2002).





[18]Holley
v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976).





[19]In re
C.H., 89 S.W.3d 17, 27 (Tex.
2002).





[20]Id.





[21]Id.





[22]See
id. at 28.





[23]386 U.S. 738, 87 S. Ct.
1396 (1967).





[24]Specifically,
the trial court found that Joseph (1) knowingly placed or knowingly allowed the
children to remain in conditions or surroundings which endangered their
physical or emotional well-being; and (2) engaged in conduct or knowingly
placed the children with persons who engaged in conduct which endangered their
physical or emotional well-being; and that termination of Joseph=s
parental rights is in the children=s best interest.  See Tex.
Fam. Code Ann. '
161.001(1)(D)&(E) & (2) (Vernon
Supp. 2008).





[25]In re
K.M., 98 S.W.3d 774, 776B77 (Tex. App.CFort Worth 2003, no pet.). 





[26]See Stafford v. State, 813 S.W.2d 503, 511 (Tex.
Crim. App. 1991); Mays v. State, 904 S.W.2d 920, 923 (Tex. App.CFort
Worth 1995, no pet.).





[27]See
Penson v. Ohio, 488
U.S. 75, 82B83,
109 S. Ct. 346, 351 (1988).





[28]In re
M.S., 115 S.W.3d 534, 544 (Tex.
2003).





[29]Id. at
549; Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984). 





[30]Strickland, 466
U.S. at 687, 104 S. Ct. at
2064; Salinas v. State, 163 S.W.3d
734, 740 (Tex.
Crim. App. 2005).





[31]Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).





[32]See
Strickland, 466 U.S.
at 688B89,
104 S. Ct. at 2065.





[33]Salinas, 163 S.W.3d at 740; Mallett
v. State, 65 S.W.3d 59, 63 (Tex.
Crim. App. 2001).





[34]Strickland,
466 U.S. at 687,
104 S. Ct. at 2064.





[35]Id. at 694, 104 S. Ct.
at 2068.





[36]Id.





[37]Id. at 697, 104 S. Ct.
at 2070.





[38]Tex. R.
App. P. 33.1(d).





[39]See
Strickland, 466 U.S.
at 688B89,
104 S. Ct. at 2065.





[40]See Id., at 687, 104 S. Ct.
at 2064.





[41]See
Bledsoe v. State, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005).