

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-287-CV

IN THE INTEREST OF
J.C., JR. AND A.C.

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellants Jessica and Joseph C. appeal the termination of their parental rights to J.C., Jr. and A.C. The trial court found that appellants knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and engaged in conduct or knowingly placed the children with persons who engaged

----

[1] *See* Tex. R. App. P. 47.4.

in conduct which endangered their physical or emotional well-being.[2] The trial court further found that termination of appellants' parental rights is in the children's best interest.[3]

In two issues, Jessica contends that the evidence supporting the trial court's findings is legally and factually insufficient. Joseph's court-appointed appellate counsel has filed a motion to withdraw and a supporting brief presenting potential issues whether the evidence is legally and factually sufficient, and whether trial counsel provided constitutionally ineffective assistance. We affirm.

## STANDARDS OF REVIEW FOR LEGAL AND FACTUAL SUFFICIENCY CHALLENGES IN TERMINATION CASES

In proceedings to terminate the parent-child relationship, the State must establish one or more of the acts or omissions enumerated under Texas Family Code section 161.001, and must also prove that termination is in the best interest of the child.[4] These elements must be established by clear and

---

[2] *See* Tex. Fam. Code Ann. § 161.001(1)(D) & (E) (Vernon Supp. 2008).

[3] *See Id.* § 161.001(2).

[4] *Id.* § 161.001(1) & (2); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

2

convincing evidence,[5] defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[6]

In reviewing the evidence for legal sufficiency in parental termination cases, we must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven.[7] We must review all the evidence in the light most favorable to the finding and judgment.[8] This means that we must assume that the factfinder resolved any disputed facts in favor of its finding if a reasonable factfinder could have done so.[9] We must also disregard all evidence that a reasonable factfinder could have disbelieved.[10] We must consider, however, undisputed evidence even if it is contrary to the finding.[11]

---

[5] Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2008); *J.L.*, 163 S.W.3d at 84.

[6] Tex. Fam. Code Ann. § 101.007 (Vernon 2002).

[7] *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

In reviewing the evidence for factual sufficiency, we must give due deference to the factfinder's findings and not supplant the factfinder's judgment with our own.[12] If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.[13]

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT TERMINATING JESSICA'S PARENTAL RIGHTS

The record shows the following evidence was presented on the issue of whether Jessica's rights should be terminated:

- A.C. was born with cocaine in her system. Jessica admitted to Department of Family and Protective Services (DFPS) investigator Kristina Bates that she had used cocaine while pregnant, and she agreed to have the children removed. Thereafter, Jessica completed intensive drug-addiction services and had the children returned to her. Several months after their return, however, DFPS caseworker, Cathy Kurtin, twice requested that Jessica and Joseph be drug tested but both failed to be tested. Jessica later admitted to using cocaine again and submitted to a drug test, the results of which showed habitual, almost daily use rather than a single day's relapse. DFPS then removed the children a second time and set up a new service plan. Although Jessica said she would do anything to get her children back, three subsequent drug tests came back positive for cocaine use and Jessica admitted that she had continued during the time of the new service plan to use illegal drugs.

---

[12] *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[13] *Id.*

4

She did, however, complete an inpatient drug rehabilitation program shortly before trial began.

- J.C., Jr. had emotional and speech difficulties. He began therapy sessions with Kelley Spell, a licensed professional counselor, while in foster care. In their initial sessions, he exhibited destructive tantrums, communication difficulties, and anxiety. During his time in foster care, however, Spell observed in him much improvement and increased comfort. Psychologist Paul Cuppett first saw J.C., Jr. when the boy was three years, three months old. Although he noted that J.C., Jr. had some difficulties with his speech and emotions, Cuppett found that he was a bright boy with an average I.Q. When he was removed from his parents for a second time, J.C., Jr. was returned to the same foster parents. Under their care, he resumed his therapy with Spell. She noted that J.C., Jr. appeared to have regressed while living with his parents to bedwetting and soiling his pants, which she testified indicated frustration, anger, and anxiety. Dr. Cuppett also noted that J.C., Jr. had regressed, appearing fearful and anxious and displaying much separation anxiety from his foster mother. He testified that remaining with the foster parents was important for J.C., Jr.'s long-term development. He had concerns about the child going back to appellants because of the neglect that stems from drug abuse.

- Kurtin visited the home after the children's return following Jessica's initial drug treatment. Kurtin testified that the small apartment was "very very messy." In addition to the family, it housed two cats and a pregnant pit-bull-like dog. The children's bedroom was "in disarray." And when Kurtin returned the next month, there was no improvement: food crumbs littered the base of a coffee table and the animals were still there. Kurtin told Jessica that she needed to pick things up and get the place more organized. Months after her initial visit, Kurtin observed that the apartment was worse than before: it smelled, dirty dishes were everywhere, the dog had given birth to six puppies, cats had been on the stove eating out of a pot, and the family did not seem to be "making it financially." Appellants' medicaid benefits had lapsed, J.C. Jr. was not getting the therapy he needed, and the children's shots were not current. The home environment caused Kurtin concern for the children's safety. She returned to the apartment once more that month, and, although things had "been picked up some"—dishes were off the counter and three

puppies were gone—it still did not look like the family had moved in. She recommended a homemaker service to help with the cleaning, but appellants failed to participate.

- Psychologist Nichelle Wiggins evaluated Jessica a few days before trial. The results of her evaluation did not support returning the children to Jessica. She noted that Jessica was physically and emotionally addicted to cocaine, and that she continued using it despite knowing the potential for very serious consequences. Wiggins testified that Jessica needed intensive treatment and was not in any position to parent effectively. Although Jessica had gone through intensive treatment the year before—doing well enough to have the children returned after four to five months—she relapsed, which, according to Wiggins, placed the children in a very difficult and confusing situation with a high risk of developing emotional and behavioral issues.

Having carefully considered the evidence and applying the appropriate legal and factual sufficiency standards of review, we hold that, on the entire record, the trial court could have reasonably formed a firm belief or conviction that Jessica engaged in conduct that endangered the children's physical and emotional well-being and that caused the children to remain in conditions or surroundings that endangered their physical or emotional well-being. Drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct.[14] Although Jessica sought treatment for her addiction, the evidence shows that her addiction to cocaine was resistant to treatment and had persisted despite more than a year of significant intervention

---

[14] *In re U.P.*, 105 S.W.3d 222, 234 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

6

and programs aimed at addressing its control. The trial court could have reasonably inferred from her past drug use that similar conduct would recur if the children were returned to her.[15] We hold, therefore, the evidence legally and factually sufficient to support the trial court's endangerment findings under subsections (D) and (E).

In addition to one of the statutory endangerment findings, the evidence must show that termination is in the child's best interest. There is a strong presumption that keeping a child with a parent is in the child's best interest.[16] Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest.[17]

Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(A)  the desires of the child;

(B)  the emotional and physical needs of the child now and in the future;

---

[15] *See In re J.D.B.*, No. 02-06-00451-CV, 2007 WL 2216612, at *3 (Tex. App.—Fort Worth Aug. 2, 2007, no pet.)(mem. op.); *In re C.S.C.*, No. 02-06-00254-CV, 2006 WL 3438185, at *7 (Tex. App.—Fort Worth Nov. 30, 2006, no pet.) (mem.op.)

[16] *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

[17] Tex. Fam. Code Ann. § 263.307(a) (Vernon 2002).

7

(C)     the emotional and physical danger to the child now and in the future;

(D)     the parental abilities of the individuals seeking custody;

(E)     the programs available to assist these individuals to promote the best interest of the child;

(F)     the plans for the child by these individuals or by the agency seeking custody;

(G)     the stability of the home or proposed placement;

(H)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)     any excuse for the acts or omissions of the parent.[18]

These factors are not exhaustive; some may not apply to some cases; other factors not on the list may also be considered when appropriate.[19] Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.[20] On the other hand, the presence of scant evidence relevant to each factor will not

---

[18] *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

[19] *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

[20] *Id.*

support such a finding.[21]  In this case, a number of these factors weigh in favor of termination as being in the children's best interest.

## A.    Desires of the Child

Given their ages, it is difficult to determine with any precision the children's desires.  At the time of trial, A.C. was one year old and J.C., Jr. was four.  But there is evidence that they were doing well with the foster family.  Kurtin testified that A.C. was doing "very well," and Spell testified that J.C., Jr. had "built a rapport" with the foster parents and felt comfortable speaking to them.  In addition, both the court-appointed child advocate and the children's ad litem recommended terminating appellants' parental rights.

## B.    The Children's Present and Future Emotional and Physical Needs

There was evidence that the foster family could better provide for the children's present and future emotional and physical needs than appellants could.  The evidence was undisputed that Jessica was emotionally and physically addicted to cocaine.  A.C. was born with cocaine in her system because her mother used the drug during her pregnancy, including the day before A.C. was born.  Cuppett testified that children whose parents abuse drugs often suffer from neglect. In appellants' custody, the children's medicaid

---

[21] *Id.*

9

benefits had lapsed, and their shots were not current. Cuppett testified that they were at risk of developing emotional issues often seen with neglect that stems from a parent's use of illegal drugs. In foster care, on the other hand, A.C. was doing "very well." She had medical needs such as ear infections, fever, and a possible virus, all of which the foster parents had appropriately attended to. With appellants, J.C., Jr. did not consistently receive the therapy he needed and had regressed after being returned to their care. In contrast, with the foster parents, he was able to resume therapy and receive the stability he very much needed. He had become very attached to his foster parents and felt safe with them.

## C.    Parental abilities

The psychologist who evaluated Jessica testified that she would not be able to effectively parent because of her drug addiction, which had persisted despite significant intervention. On the other hand, there was evidence that the foster family — a minister and stay at home mom—could provide the security and stability that the children needed.

## D. Stability

Spell testified to the importance of stability for the children as soon as possible. J.C., Jr., especially, was described as emotionally fragile. The evidence showed that his need for stability was paramount. The record showed

that appellants, addicted to illegal drugs and continuing to use them up to shortly before trial, could not provide that stability. Spell testified that the foster family was providing stability and that J.C., Jr.'s attachment to them was the only consistent thing in his life. Cuppett testified that frequent moves for children play a dramatic role in their development. He believed that remaining with the foster parents was important for the children's long-term development, and he voiced concerns about them going back to appellants because of the neglect that stems from drug abuse.

After carefully considering the evidence in light of these factors and applying the appropriate legal and factual sufficiency standards of review, we hold that the trial court could have reasonably formed a firm belief or conviction that termination was in the children's best interest and that the evidence is legally and factually sufficient to support that finding.[22] We overrule Jessica's issues.

## JOSEPH'S FRIVOLOUS APPEAL

Joseph's court-appointed appellate counsel has filed a motion to withdraw as counsel and a brief in support of that motion, stating that he has reviewed the record and can find no non-frivolous grounds for appeal. In

---

[22] *See id.* at 28.

11

accordance with *Anders v. California*,[23] counsel presents as potential issues for review whether the evidence was factually and legally sufficient to support termination of Joseph's parental rights[24] and whether trial counsel provided constitutionally effective representation. We have held that *Anders* procedures apply in parental termination cases.[25] In our duties as a reviewing court, we must conduct an independent evaluation of the record to decide whether counsel is correct in determining that the appeal is frivolous.[26] Only then may we grant counsel's motion to withdraw.[27]

The evidence we found legally and factually sufficient to sustain the trial court's endangerment and best interest findings as to Jessica applies equally

---

[23] 386 U.S. 738, 87 S. Ct. 1396 (1967).

[24] Specifically, the trial court found that Joseph (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; and (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; and that termination of Joseph's parental rights is in the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(D)&(E) & (2) (Vernon Supp. 2008).

[25] *In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, no pet.).

[26] *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays v. State*, 904 S.W.2d 920, 923 (Tex. App.—Fort Worth 1995, no pet.).

[27] *See Penson v. Ohio*, 488 U.S. 75, 82–83, 109 S. Ct. 346, 351 (1988).

to Joseph.  He was addicted to cocaine and admitted to having a long history of drug use in New York and in Texas.  He had a pattern of refraining from drugs for short periods when he perceived dire consequences only to fall inevitably back into use.  For example, he resisted using drugs shortly during the first removal in 2006, but then admitted using cocaine the following New Year's Eve.  As with Jessica, when Joseph finally submitted to a drug test after the new year, the extremely high results indicated habitual, almost daily use.

In addition to his drug use, other evidence supports the trial court's termination of Joseph's parental rights.  Several months after A.C. was born, Joseph was arrested and charged with four counts of felony identity theft.  He was convicted and sentenced to two years' confinement in state jail probated for five years.  On the day set for trial on the termination of his parental rights, he was arrested for violating the conditions of his probation.

For these reasons, we find no merit in the potential issue whether the evidence is legally and factually sufficient to support terminating Joseph's parental rights.

Joseph's appellate counsel also presents as a potential issue whether trial counsel was ineffective for failing to object to certain scientific evidence and for failing to preserve sufficiency claims for review by not filing a motion for new trial.

13

There is a right to effective assistance of counsel in termination cases.[28] We review ineffective assistance claims under the *Strickland* standard.[29] To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.[30]

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.[31] The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.[32] Review of counsel's representation is highly deferential, and the

---

[28] *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003).

[29] *Id.* at 549; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

[30] *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).

[31] *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

[32] *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation.[33]

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result.[34] In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[35] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[36] The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged.[37]

In support of his potential issue that trial counsel may have been ineffective, appellate counsel notes that trial counsel failed to preserve a sufficiency claim by not pursuing a motion for new trial. Texas Rule of Appellate Procedure 33.1(d) provides that a motion for new trial is not

---

[33] *Salinas*, 163 S.W.3d at 740; *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

[34] *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064.

[35] *Id.* at 694, 104 S. Ct. at 2068.

[36] *Id.*

[37] *Id.* at 697, 104 S. Ct. at 2070.

necessary to preserve a sufficiency claim from a bench trial.[38] The potential issue whether trial counsel was ineffective for not preserving appellant's sufficiency claims fails, therefore, under *Strickland*'s first prong.[39]

Appellate counsel also posits in his brief that trial counsel may have been ineffective for failing to object to DFPS caseworker Kurtin's testimony that scientific tests performed on Joseph showed that he used cocaine habitually rather than just once. Counsel then surmises that "given that both parents at various stages before and after the testing admitted to drug usage, and given that both testified later in the hearing that they were using cocaine, the failure to object, although deficient by the *Strickland* guidelines, is ultimately cured by party admissions." While we do not decide whether counsel's actions were deficient under the first prong of *Strickland* or that they were cured by party admissions, we agree with counsel that, viewed in its totality, counsel's failure to object to this evidence would not have affected the outcome.[40] Therefore, we overrule Joseph's potential issue number two.

---

[38] Tex. R. App. P. 33.1(d).

[39] *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

[40] *See Id.,* at 687, 104 S. Ct. at 2064.

16

Having carefully reviewed the record and the appellate briefs, we agree with Joseph's appellate counsel that his appeal is frivolous and without merit. We find nothing in the record that might arguably support the appeal.[41]

**CONCLUSION**

Having found the evidence legally and factually sufficient to support the trial court's order terminating Jessica's parental rights and having held Joseph's appeal frivolous, we grant Joseph's appellate counsel's motion to withdraw and affirm the trial court's termination orders.

PER CURIAM

PANEL:  CAYCE, C.J.; WALKER and MCCOY, JJ.

DELIVERED:   January 22, 2009

---

[41] *See Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005).

17