**Larry Fred MAYS, Appellant,**

v.

**The STATE of Texas, State.**

**Nos. 2–93–405–CR, 2–93–406–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 10, 1995.

William S. Harris, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Chuck Mallin, Asst. Chiefs of Appellate Section, and Helena F. Faulkner, Asst., Fort Worth, for appellee.

Before CAYCE, C.J., LIVINGSTON, J., and CHUCK MILLER, J., Sitting by Assignment.

## OPINION

CAYCE, Chief Justice.

Larry Fred Mays appeals from two convictions for aggravated sexual assault of a child under fourteen years of age. Mays admitted his guilt during the punishment phase of the trial. The jury assessed his punishment at life imprisonment, enhanced by two prior convictions. We affirm.

Mays's court-appointed attorney filed a brief in which he concludes this appeal is without merit. A copy of the brief was delivered to Mays, and Mays's attorney advised him of his right to examine the appellate record and to file a pro se brief. Mays did not file a pro se brief despite numerous orders extending the filing deadline. Mays's attorney's brief is filed under the guidance and dictates of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Texas courts have had many occasions to visit the holding of *Anders*, and we digress here to examine *Anders* law and its effect on our current appellate system.

Two of the earliest Texas cases expounding on the modern interpretation of *Anders* came in the 1970's with *Currie v. State*, 516 S.W.2d 684 (Tex.Crim.App.1974) and *High v. State*, 573 S.W.2d 807 (Tex.Crim.App. [Panel Op.] 1978). The court of criminal appeals stated in *Currie* that *Anders* "should not be interpreted as requiring appointed counsel to make arguments he would not consider worthy of inclusion in a brief for a paying client or to urge reversal if in fact he can find no merit in the appeal." *Currie*, 516 S.W.2d at 684. In *High*, a panel of the court, speaking through the Presiding Judge, found it "necessary and appropriate to elaborate on [the *Anders* and *Currie* decisions]" and to discuss the duty of the reviewing court in seeing that the requirements of those decisions are met. *High*, 573 S.W.2d at 808. The court went into much more detail concerning the role of the appointed attorney in writing the brief, and of the court's duty in reviewing the brief. According to the *High* panel, the attorney should ensure that the brief contains ready references not only to the record, but also to germane legal authorities. While appointed counsel should avoid absurd or legally frivolous contentions, he or she should educate the reviewing court with all the salient facts and the relevant legal authorities, and present and analyze the critical issues in the case. *Id.* at 811.

After a long hiatus in the discussion and recapitulation of *Anders* law, the court of criminal appeals revisited the area in *Stafford v. State*, 813 S.W.2d 503 (Tex.Crim.App. 1991). The court in *Stafford*, again speaking through its present Presiding Judge, outlined the modern interpretation of correct *Anders* procedure and *Anders* brief content.

As to the brief's content, the court cited the *High* case as still authoritative. *Id.* at 510 n. 3. The *Stafford* court then discussed the procedures for modern *Anders* practice in Texas. Under *Stafford*, once an

appointed attorney[1] determines that an appeal is wholly frivolous, that is, the record will not support any reversible grounds on appeal, the attorney must file a brief referencing anything in the record that might arguably support the appeal. The attorney's motion to withdraw, citing as the reason that there is no merit to the appeal, should accompany the brief. The appellant should be furnished with copies of the motion to withdraw and accompanying brief, and the record.

The appellate court must then determine if the attorney's brief satisfies the requirements of an *Anders* brief. Assuming it does, the attorney's motion to withdraw should be granted, and after the appellant files a pro se brief (or the time allowed for such filing passes) the reviewing court must review the case to see if the court finds the appeal wholly frivolous. This includes a review of the record as a whole. If it does find the appeal wholly frivolous, the court may then decide the case and affirm the judgment of the trial court. If it does not—that is if the reviewing court, after reviewing the record and attorney's brief and pro se brief, finds any legal points that are arguable on their merits and therefore not frivolous—the reviewing court must ensure that another and different attorney is appointed to brief at least the arguable points (or the appellant can do so pro se). *See generally Stafford,* 813 S.W.2d at 509–11.

Since *Stafford,* the most thorough and authoritative discussion of *Anders* law from the perspective of a court of appeals comes from the Waco Court of Appeals in *Johnson v. State,* 885 S.W.2d 641 (Tex.App.—Waco 1994, no pet.). In *Johnson,* the Waco court detailed a long procedural and substantive review of *Anders* law as it applies to our current trial and appellate court structure in Texas. Separating the duties of both the appointed attorney and the reviewing court, the Waco court in *Johnson* accurately sets out what we also believe to be the most accurate view of *Anders* law and procedure as it applies to the Texas trial and appellate system.

Essentially, the *Stafford* and *Johnson* cases call on the court-appointed attorney who determines an appeal is frivolous to request permission from the appellate court to withdraw. Accompanying that motion should be an *Anders* brief and an exhibit showing that the attorney has sent the defendant a copy of the motion and brief, and also informed his client of the client's rights to review the record and file a pro se brief. The court of appeals then has the duty to review the brief to ensure that it meets the requirements of *Anders,* and to conduct a full examination of all the proceedings contained in the record. Once the court of appeals has satisfied itself that the appeal is wholly frivolous, it should grant the motion to withdraw, give the appellant an opportunity to file a pro se brief, and then proceed to decide the appeal.

If, however, the court disagrees that the appeal is wholly frivolous, it should ensure that another attorney is appointed to pursue the appeal, and the appellate briefing timetable begins anew. Presumably, a court of appeals that determined an appeal was wholly frivolous could change its mind after a pro se brief was filed and, at that time, abate the appeal for the appointment of a new attorney to handle the nonfrivolous appeal.

Turning now to the case at bar, in his *Anders* brief Mays's attorney has presented

---

1. Notably, the procedural safeguards outlined in the *Anders* cases do not apply to *retained* counsel. *See Penson v. Ohio,* 488 U.S. 75, 83–84, 109 S.Ct. 346, 351–52, 102 L.Ed.2d 300, 310–11 (1988). If a retained attorney concludes that an appeal lacks merit, counsel is obligated to inform the client of this conclusion and refuse to prosecute the appeal. *Johnson v. State,* 885 S.W.2d 641, 645 (Tex.App.—Waco 1994, no pet.); *see McCoy v. Court of Appeals of Wisconsin, Dist. 1,* 486 U.S. 429, 437, 108 S.Ct. 1895, 1901, 100 L.Ed.2d 440, 452 (1988). Refusing to prosecute the appeal means that the retained attorney must file a motion to withdraw under Rule 7 of the Texas Rules of Appellate Procedure. The retained attorney is *not* required to file an *Anders* brief. The decision to withdraw from retained representation does not invoke federal constitutional concerns. *Johnson,* 885 S.W.2d at 645.

a professional evaluation of the record, organized in a hybrid of the traditional Texas Rules of Appellate Procedure manner by potential sources of error (rather than points of error). The brief exceeds the dictates of modern *Anders* requirements. This court, having followed the above procedure following the filing of the motion to withdraw, and Mays himself having been given an opportunity file a brief pro se, and the time for filing of that brief having passed, we now turn to a discussion of and resolution of the potential sources of error and of the case itself.

In his first two potential sources of error, Mays asserts that the trial court erred by failing to suppress a statement made during a custodial interrogation because Mays did not explicitly waive both his right to remain silent and his right to counsel. Shortly after his arrest, Mays made a detailed statement admitting his offenses to Detective Tom Boetcher of the Fort Worth Police Department.

■ An accused must knowingly and voluntarily waive his rights in order for a custodial statement to be admissible. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2(b) (Vernon 1979). The court should look to the totality of the circumstances in determining whether a waiver is knowing and voluntary. *Richardson v. State*, 632 S.W.2d 700, 705 (Tex.App.—Fort Worth 1982, no pet.). An explicit waiver of constitutional rights is not required. *North Carolina v. Butler*, 441 U.S. 369, 375–76, 99 S.Ct. 1755, 1758–59, 60 L.Ed.2d 286, 293–94 (1979). Similarly, the accused does not have to explicitly invoke his rights to be entitled to constitutional protection. *See Watson v. State*, 762 S.W.2d 591, 597 (Tex. Crim.App.1988); *United States v. Ledezma–Hernandez*, 729 F.2d 310, 313 (5th Cir.1984).

■ At the hearing on Mays's motion to suppress, two witnesses, one called by the State and the other called by Mays, testified that Mays did not request a lawyer. Mays did not testify at the hearing. Detective Boetcher testified that he had Mays both read and initial a *Miranda* warning form, and that he told Mays that by signing the form Mays was agreeing to waive his *Miranda* rights and talk to him. Mays then signed the form and talked to him. The State introduced the form into evidence at the hearing. The defendant's witness, Ms. Ezette Pickens, a secretary for the police department, testified that Mays dictated the statement to her. Mays renewed his objections to the statement during trial.

We find that the trial court did not abuse its discretion in admitting Mays's statement. The testimony of Detective Boetcher and Ms. Pickens clearly established that Mays waived his rights to counsel and to remain silent prior to dictating his statement. The statement was, therefore, admissible. *See Port v. State*, 798 S.W.2d 839 (Tex.App.—Austin 1990, pet. ref'd). Potential sources of error one and two are overruled.

■ In his third potential source of error, Mays contends that the trial court erred in granting the State's single challenge for cause. The fifth venireperson, Michael Johnson, had a son accused of aggravated sexual assault of a child under fourteen years of age. He testified unequivocally that he could not be fair in evaluating the State's case because of the charge against his son. Mays's counsel could not rehabilitate him and Mays did not object to the granting of the challenge for cause.

■ We have reviewed the record and conclude that there was no error granting the challenge for cause. Bias against the State and in favor of the defendant is a proper ground for a challenge for cause. TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(9), (b)(3) (Vernon 1989). Potential source of error three is overruled.

In his next three potential sources of error, Mays complains of the trial court's failure to sustain his objection to the form of the State's opening statement and the failure to properly qualify the State's outcry witness. These potential sources of error occurred during the guilt/innocence phase of the trial. During the punishment phase, however,

Mays admitted that he committed the alleged offenses.

■ If a defendant admits his guilt during the punishment phase, he waives any nonjurisdictional error that might have occurred during the guilt/innocence phase. *DeGarmo v. State,* 691 S.W.2d 657, 661 (Tex.Crim. App.), *cert. denied,* 474 U.S. 973, 106 S.Ct. 337, 88 L.Ed.2d 322 (1985); *see Routledge v. State,* 834 S.W.2d 452, 457 (Tex.App.—Fort Worth 1992, pet. ref'd). We hold that Mays's admission of guilt during the punishment phase of the trial waived any potential sources of error which may have arisen out of actions taken by the trial court during the guilt/innocence phase of the trial. Potential sources of error four, five, and six are overruled.

In his seventh potential source of error, Mays contends that there is insufficient evidence to prove penetration for each indicted offense. However, as we held above, Mays waived any complaint regarding the sufficiency of the evidence to support the conviction by admitting his guilt during the punishment phase of the trial. *See DeGarmo,* 691 S.W.2d at 661. Potential source of error seven is overruled.

In his eighth potential source of error, Mays contends that the trial court erred at the punishment stage when it failed to exclude evidence of his 1989 conviction for sexual assault of a child. Mays objected to the introduction of the prior conviction on the ground that the indictment was void because it had been amended, and it appeared that the amendment to the indictment did not bear any indicia of notice to the accused and was not supported by a motion to amend by the State.

■ A trial court may amend an indictment after trial begins if the defendant does not object. Tex.Code Crim.Proc.Ann. art. 28.10(b) (Vernon 1989); *Hillin v. State,* 808 S.W.2d 486, 487 (Tex.Crim.App.1991). The record shows that Mays consented to the amendment to the indictment when he signed a plea agreement. There is nothing in the

record of the prior conviction which shows that Mays objected to the amendment. Potential source of error eight is overruled.

In his ninth potential source of error, Mays contends the trial court erred in the punishment stage when it overruled an objection to a hypothetical question asked of Mays's expert during cross-examination because the question was not supported by the evidence. Dr. Richard Schmitt, a clinical psychologist, testified that he had evaluated Mays and concluded that Mays was a fixated pedophile due to the sexual abuse he had been subjected to as a child. He said Mays was treatable, but criticized as ineffective the treatment Mays had received from the therapist provided by the parole board.

During cross-examination, the prosecutor asked Dr. Schmitt if Mays would be dangerous to children if released untreated at this time. Mays objected to the hypothetical on the grounds that it assumed a set of facts outside the realm of possibility, because his conviction made release without treatment a legal impossibility. The court overruled the objection and Dr. Schmitt answered that Mays would be dangerous to children if released without treatment at this time.

■ Although a hypothetical question must be based on the facts of the case, counsel may assume facts in accordance with his theory of the case. *Barefoot v. State,* 596 S.W.2d 875, 887–88 (Tex.Crim.App.1980), *cert. denied,* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981). The prosecutor's question was predicated on the assumption that Mays could possibly be released without treatment. While Mays's conviction made his release without treatment unlikely, the question supported the State's theory that Mays would be a danger to children if not put in prison. The court properly overruled Mays's objection. Potential source of error nine is overruled.

In his tenth and eleventh potential sources of error, Mays complains of two instances of allegedly improper jury argument by the prosecutor during final argument on punish-

ment. Mays asserts that the court erred in failing to grant a mistrial after the prosecutor twice argued outside of the record. The prosecutor argued that Mays never told Detective Boetcher that he had been abused as a child. The court sustained Mays's objection that this argument was outside the record and instructed the jury to disregard the argument, but refused to declare a mistrial. The prosecutor then argued that Mays had the money for a car, but not for counselling for his pedophilia. The court again sustained Mays's objection that this argument was outside the record and instructed the jury to disregard the argument, but refused to declare a mistrial.

The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980). To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Gaddis v. State,* 753 S.W.2d 396, 397 (Tex.Crim.App.1988); *Cannon v. State,* 668 S.W.2d 401, 404 (Tex.Crim.App.1984).

The comments by the prosecutor arguably fall into category (2), reasonable deductions from the evidence, or category (1), summation of the evidence, or category (4), a plea for law enforcement. As such we are wont to hold the arguments improper. This is so notwithstanding Mays's contention that the first comment was improper, because the record fails to show that Detective Boetcher asked Mays any questions about his background as a victim of abuse, and Mays's contention that the second comment is improper because the record contains no evidence showing who owned the car driven on the night of the first offense or, if Mays did own it, how he acquired the vehicle.

But even if the remarks were improper, the trial judge sustained the objections and instructed the jury to disregard the arguments.

Generally, an instruction to disregard improper jury argument cures any harm caused by improper comments. *Anderson v. State,* 633 S.W.2d 851, 855 (Tex. Crim.App. [Panel Op.] 1982); *Hodge v. State,* 631 S.W.2d 754, 759 (Tex.Crim.App. [Panel Op.] 1982). We find that the harm, if any, caused by the jury arguments was cured by the trial court's instruction to disregard.

Moreover, even if the error were not cured by the trial court's timely instruction to disregard, we find the error harmless beyond a reasonable doubt. In saying so, we are mindful of the pronouncement in *Orona v. State,* 791 S.W.2d 125, 130 (Tex.Crim.App. 1990) wherein the court of criminal appeals stated:

> The task before us is not to determine the harmfulness of the error simply by examining whether there exists overwhelming evidence to support appellant's guilt. Rather, we must examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and it's probable collateral implications.

*Id.* The mere fact that there is overwhelming evidence of guilt is no longer determinative. Under *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989), we must primarily focus our attention on whether the error at issue might possibly have prejudiced the juror's decision making. *Orona,* 791 S.W.2d at 130.

Here, having examined the entire record and arguments of counsel under the test set out in *Harris,* as applied in *Orona,* we hold beyond a reasonable doubt that the alleged error made no contribution to the verdict. Tex.R.App.P. 81(b)(2).

Potential source of errors ten and eleven are overruled.

After careful review of the entire record, we conclude there is no error which might

arguably support an appeal or require reversal. The judgment of the trial court is affirmed and the request to withdraw is granted.