

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00172-CV

IN THE INTEREST OF J.A.G.M.
AND A.M.M.

----------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant A.M. (Mother) appeals the termination of her parental rights to her children, J.A.G.M. (John) and A.M.M. (Amanda).[2] Mother's court-appointed counsel has filed a motion to withdraw and an *Anders* brief in support stating that after diligently reviewing the record, he believes that any appeal by Mother would be frivolous. *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967).

---

[1]*See* Tex. R. App. P. 47.4.

[2]We use aliases for the children and their relatives throughout this opinion. *See* Tex. R. App. P. 9.8(b)(2).

Although given notice and an opportunity to file a pro se brief, Mother did not do so. We affirm.

## Background Facts

Mother has three children, two of which are the subject of this suit.[3] John was born in 2008 in Texas. Mother prematurely gave birth to Amanda in California in June 2011. Mother went into early labor because of a placental abruption, which is commonly caused by cocaine use, and which required emergency delivery of the baby. Amanda tested positive at birth for methamphetamines. Mother tested positive for cocaine and methamphetamines. Mother later admitted that she had used "speed, cocaine and marijuana, including one or two times when pregnant with her daughter because she was tired but had to work." She also described a history of mental health issues, including depression and schizophrenia.

In April 2012, Mother was visiting with her mother (Grandmother) in Little Elm, Texas. One night while Mother was staying there, Mother, Grandmother, and Mother's sister went to a party and then to a bar. The next morning, April 29, 2012, Grandmother and Mother's sister left the house to attend a meeting. Mother stayed at home with Amanda, Kevin, and Mother's nephews. John was playing at a neighbor's house. Mother claimed that she put Amanda in the bathtub and left the bathroom to get a towel. When she returned, she noticed

---

[3]Mother's rights to her oldest child, K.M. (Kevin) were not litigated in this suit.

2

that Amanda was breathing differently and not acting normally.[4]  Mother's neighbor came by the house to return John and called 911.

Amanda was taken to Denton Regional Medical Center and later transported to the intensive care unit at Children's Medical Center.  The medical director at the hospital, Dr. Matthew Cox, testified that when Amanda was admitted into intensive care, she was on life-support measures and "neurologically she wasn't showing any movement or normal neurologic function."  An examination revealed second and third-degree burns to Amanda's feet, ankles, genitalia, bottom, hip, and one ear.  Her left arm was "very swollen and very bruised," she had small puncture wounds on her shoulder, and lab results showed elevated enzymes.  The burns to her feet were so severe that they required skin grafts.  Dr. Cox explained that the circumferential burns around Amanda's ankles were consistent with being immersed in "scalding hot water."

Dr. Cox later discovered that Amanda's ankle was also broken in what he called a "buckle-type fracture."  He explained that this type of injury is unusual for children Amanda's age and he was concerned that it was "an inflicted injury."  A MRI scan of Amanda's brain showed cytotoxic edema, which is brain cell injury,

---

[4]Mother told a Department of Family and Protective Services (DFPS) special investigator that she did not notice that Amanda was not breathing right until after she had finished bathing her and had laid her down to dress her.

3

throughout her brain.  Dr. Cox opined that this type of injury results from three to five minutes of lack of oxygen to the brain.

Doctors diagnosed Amanda with cerebral palsy, "a brain injury at an early point in life."  Dr. Cox explained that lack of oxygen to the brain can cause the type of brain injury that Amanda suffered.  Mother's relatives testified that Amanda did not have symptoms of cerebral palsy or show any signs of developmental delays before the incident.  Amanda's occupational therapist testified that Amanda suffered delays in her fine motor skills such as grasping toys and feeding herself and that her primary means of mobility was rolling on the floor.  The therapist also said that Amanda had hypertonicity in her left hand, which meant that her hand was constantly clenched in a fist.

Mother did not provide any explanation for Amanda's burns to the doctor at the hospital.  Dr. Cox testified that Amanda's injuries "had no explanation other than inflicted injuries and child abuse."  DFPS took possession of the children and sought termination of Mother's rights to John and Amanda.[5]

After a trial, a jury found that Mother had engaged in conduct, or had knowingly placed John and Amanda with persons who engaged in conduct, that endangered their physical or emotional well-being; had knowingly placed or had knowingly allowed John and Amanda to remain in conditions or surroundings that

---

[5]DFPS also sought to terminate the parental rights of John's and Amanda's fathers.  The fathers' rights were terminated in an interlocutory order prior to trial. Neither father is a party to this appeal.

4

endangered their physical or emotional well-being; had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children; and had used a controlled substance in a manner that endangered John's and Amanda's health or safety and had failed to complete a court-ordered substance abuse treatment program. The jury also found that termination of Mother's parental rights to John and Amanda was in the children's best interest. The trial court terminated Mother's parental rights to John and Amanda, and this appeal followed.

**Discussion**

In Mother's counsel's motion, he averred that he has conducted a professional evaluation of the record and, after a thorough review of the applicable law, has reached the conclusion that there are no arguable grounds to be advanced to support an appeal of this cause and that the appeal is frivolous. Counsel's brief and motion meet the requirements of *Anders* by presenting a professional evaluation of the record demonstrating why there are no reversible grounds on appeal and referencing any grounds that might arguably support the appeal. *See Anders*, 386 U.S. at 741, 87 S. Ct. at 1398; *Mays v. State*, 904 S.W.2d 920, 922–23 (Tex. App.—Fort Worth 1995, no pet.). This court has previously held that *Anders* procedures apply in parental rights termination cases when DFPS has moved for termination. *In re K.M.*, 98 S.W.3d 774, 776–77 (Tex. App.—Fort Worth 2003, no pet.). Mother was given the opportunity to file a pro

se brief on her own behalf, but she did not do so. DFPS did not respond to Mother's counsel's motion.

In our duties as a reviewing court, we must conduct an independent evaluation of the record to determine whether counsel is correct in determining that the appeal is frivolous. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays*, 904 S.W.2d at 923. Only then may we grant counsel's motion to withdraw. *See Penson v. Ohio*, 488 U.S. 75, 82–83, 109 S. Ct. 346, 351 (1988). We have carefully reviewed the appellate record and Mother's appellate counsel's brief. We agree with her appellate counsel that the appeal is wholly frivolous and without merit. We find nothing in the record that might arguably support the appeal. *See In re J.T.*, No. 02-10-00284, 2011 WL 856927, at *1 (Tex. App.—Fort Worth, Mar. 10, 2011, no pet.) (citing *Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005)). Therefore, we grant Mother's appellate counsel's motion to withdraw and affirm the trial court's judgment terminating Mother's parental rights to her children.

## Conclusion

Having granted the motion to withdraw filed by Mother's counsel, we affirm the trial court's judgment terminating Mother's parental rights to John and Amanda.

LEE GABRIEL
JUSTICE

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED: November 1, 2013

6