# NO. 12-19-00085-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF D.J.H.,* | § | *APPEAL FROM THE COUNTY* |
| | § | *COURT AT LAW NO. 2* |
| *A CHILD* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

D.F. appeals the termination of her parental rights.  D.F.'s counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *Gainous v. State*, 436 S.W.2d 137 (Tex. Crim. App. 1969).  We affirm.

## BACKGROUND

D.F. is the mother of D.J.H. and K.H. is the father.[1]  On August 18, 2017, the Department of Family and Protective Services (the Department) filed an original petition for protection of D.J.H., for conservatorship, and for termination of D.F.'s and K.H.'s parental rights.  The Department was appointed temporary managing conservator of the child, and D.F. was granted limited access to and possession of the child.

The evidence shows that the mother, D.F., was seventeen years old when she gave birth to D.J.H.  During the course of the investigation, the Department was concerned about D.F.'s lack of maturity and her living environment, specifically smoking in close proximity to the child, living with maternal grandparents who had a history with the Department and criminal convictions, and a

---

[1] At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that K.H. executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by Chapter 161 of the Texas Family Code and subsection (K) of Texas Family Code Section 161.001(b)(1).  The trial court also found that termination of the parent-child relationship between K.H. and D.J.H. is in the child's best interest.  Based on these findings, the trial court ordered that the parent-child relationship between K.H. and D.J.H. be terminated. The father of D.J.H. is not a party to this appeal.

home that was not clean or appropriate. The Department was concerned about D.J.H.'s eating and drinking, specifically that he was drinking sweet tea and Kool-Aid from a sippy cup when he was four to five months old. The Department told D.F. that it was not appropriate for a child his age to drink sweet tea or Kool-Aid. According to the caseworker, D.F. did not respond or change her behavior. D.F. testified that she did not see anything wrong in feeding him sweet tea and Kool-Aid.

Further, D.J.H.'s pediatrician informed the Department that the child was low in weight on the growth chart at both his four month and six month visits. The pediatrician's office did not believe the baby was being fed as recommended. The Department stressed to D.F. the importance of D.J.H. being fed every two to three hours to have him gain weight consistently and gave her feeding logs to chart each time that she fed the child. Of the two feeding logs turned in to the Department, there appeared to be "big chunks of time" between feedings, specifically, one instance of approximately nineteen hours between feedings. According to D.F., she was sleeping and the child was, "more than likely," fed by D.F.'s mother. When D.J.H. was removed from D.F.'s care, he "very, very quickly" moved up the growth and weight charts.

The Department was also concerned that neither D.F. nor her mother recognized that smoking near the child could be dangerous. D.F. testified that her parents smoked when she was a child, and both D.F. and her mother became frustrated with the caseworker about smoking in the same room as the child. Regarding parenting classes, the instructor noted that it was "extremely" difficult to keep D.F. focused and she had to "constant[ly]" ask her to put her cellular telephone down. The instructor discontinued parenting classes due to D.F.'s lack of participation and lack of a "willing spirit" to improve her parenting. D.F. told the instructor that she no longer needed parenting classes and testified that she could "probably" work on some things, but has to do "[her] own style of parenting." Karen Mooney, a conservatorship worker with the Department, testified that D.F. did not know about age appropriate discipline, seemed focused on herself, and did not show improvement in her parenting skills during the case. D.F. told the CASA volunteer that she allowed D.J.H. to be around his father even if she knew he was on drugs because she believed she could protect him. The CASA volunteer was "very" concerned about D.F.'s ability to be a protective, providing mother.

Mooney testified that D.F. completed several tasks in her family plan of service including counseling, attending meetings, conferences, hearings, and visitations. However, D.F. did not maintain employment or show that she could provide financially for herself and the child. At the

2

time of trial, D.F. had been employed for a month or two, but had not submitted any paystubs to the Department. Nor did D.F. follow the recommendations from her psychosocial or psychological evaluations. The evaluations suggested that she has a high probability of suffering from bipolar disorder, but she refused to be medicated. D.F.'s past mental health diagnoses include depression, anxiety, post traumatic stress disorder, panic attacks, sleep disorder, suicidal thoughts, and cutting.

D.F. does not have a stable home even though she lives with her parents. There were issues with domestic violence in the home between D.F. and D.F.'s father. Her father was convicted of assault family violence against her in 2016, and has four driving while intoxicated convictions. D.F. left the home four times in the past year because of arguments with her father when he drinks. She admitted that in November 2018, or three months before trial, her father still drank and got "just a little bit" out of control. D.F. did not believe that D.J.H. was in danger around her parents. Mooney testified that D.F.'s parents have extensive Department history, including nine reports of neglectful supervision, medical neglect, physical neglect, and physical abuse. Some of these reports were determined to be "reason to believe." Further, there were five adult protective service reports regarding D.F.'s autistic adult brother, including physical abuse, physical neglect, malnutrition, and unsanitary home conditions. Mooney testified that during one visitation, D.F.'s brother hit D.J.H. Mooney and the CASA volunteer recommended that D.F.'s parental rights be terminated.

At the conclusion of the trial on the merits, the trial court found, by clear and convincing evidence, that D.F. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between D.F. and D.J.H. is in the child's best interest. Based on these findings, the trial court ordered that the parent-child relationship between D.F. and D.J.H. be terminated. This appeal followed.

## ANALYSIS PURSUANT TO *ANDERS V. CALIFORNIA*

D.F.'s counsel filed a brief in compliance with *Anders*, stating that counsel diligently reviewed the appellate record and is of the opinion that the record reflects no reversible error and that there is no error upon which an appeal can be predicated. This court previously held that *Anders* procedures apply in parental rights termination cases when the Department moved for termination. *See In re K.S.M.*, 61 S.W.3d 632, 634 (Tex. App.—Tyler 2001, no pet.). In compliance with *Anders*, counsel's brief presents a professional evaluation of the record demonstrating why there

3

are no reversible grounds on appeal, and referencing any grounds that might arguably support the appeal. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *Mays v. State*, 904 S.W.2d 920, 922-23 (Tex. App.—Fort Worth 1995, no pet.).

In our duties as a reviewing court, we must conduct an independent evaluation of the record to determine whether counsel is correct in determining that the appeal is frivolous. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays*, 904 S.W.2d at 923. We carefully reviewed the appellate record and counsel's brief. We find nothing in the record that might arguably support the appeal.[2] *See Taylor v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646–47 (Tex. App.—Austin 2005, pet. denied).

## DISPOSITION

We agree with D.F.'s counsel that the appeal is wholly frivolous. In *In re P.M.*, the Texas Supreme Court held that the right to counsel in suits seeking the termination of parental rights extends to "all proceedings in [the Texas Supreme Court], including the filing of a petition for review." 520 S.W.3d 24, 27 (Tex. 2016). Accordingly, counsel's obligation to D.F. has not yet been discharged and counsel did not move to withdraw. *See id*. If D.F., after consulting with counsel, desires to file a petition for review, counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *See id.* at 27-28; *see also A.C. v. Tex. Dep't of Family & Protective Servs.*, No. 03-16-00543-CV, 2016 WL 5874880, at \*1 n.2 (Tex. App.—Austin Oct. 5, 2016, no pet.) (mem. op.). We *affirm* the trial court's judgment. *See* TEX. R. APP. P. 43.2.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered August 21, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[2] In compliance with *Kelly v. State*, counsel for D.F. certified that he provided her with a copy of his brief, informed her of her right to file a pro se response, and took concrete measures to facilitate her review of the appellate record. 436 S.W.3d 313, 319 (Tex. Crim. App. 2014). D.F. was given time to file her own brief, but the time for filing such brief has expired and no pro se brief has been filed.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 21, 2019**

**NO. 12-19-00085-CV**

**IN THE INTEREST OF D.J.H., A CHILD**

Appeal from the County Court at Law No. 2
of Angelina County, Texas (Tr.Ct.No. CV-00564-17-08)

THIS CAUSE came to be heard on the appellate record and brief filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*