# NO. 12-19-00224-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | *§* | *APPEAL FROM THE 145TH* |
| *P.R.M.D., K.C.D. AND J.M.D.,* | *§* | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | *§* | *NACOGDOCHES COUNTY, TEXAS* |

## MEMORANDUM OPINION
### PER CURIAM

T.M.D. appeals the termination of his parental rights. T.M.D.'s counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *Gainous v. State*, 436 S.W.2d 137 (Tex. Crim. App. 1969). We affirm.

## BACKGROUND

T.M.D. is the father and R.A.M. is the mother of P.R.M.D., K.C.D., and J.M.D.[1] On May 8, 2018, the Department of Family and Protective Services (the Department) filed an original petition for protection of the children, for conservatorship, and for termination of T.M.D.'s and R.A.M.'s parental rights. The Department was appointed temporary managing conservator of the children, and the parents were granted limited access to, and possession of, the children. The father, T.M.D., requested a jury trial.

At trial, the evidence shows that Kassandra Romine, an investigator with the Department, testified that in May 2018, she received a report regarding the three children, alleging that law enforcement went to their home because a man was there with a gun, there was no food in the house, the oldest child was taking home food to feed his siblings, and R.A.M. left the children with T.M.D. and did not return for over a month. R.A.M. admitted that the allegations were true, and

---

[1] After the trial, the court appointed the Department as managing conservator and the mother, R.A.M., was appointed possessory conservator of the children. The mother of the children is not a party to this appeal.

she was using methamphetamine and marijuana in the home with the children. According to Romine, R.A.M. stated that T.M.D. and his mother used methamphetamine, there was violence in the home, and the children were not supervised. At that point, Romine removed the children.

Romine contacted T.M.D. in her office on May 8, 2018. He stated that he did not have his own home, he was living with his mother, he and his mother used methamphetamine, and he did not have any appropriate family members with whom to place the children. Romine set up visitation for both parents with the children within five days of the removal and T.M.D. did not appear, stating afterwards that he had to work. She scheduled another visitation for him, but he again failed to appear.

R.A.M., the children's mother, testified she married T.M.D. on November 22, 2013. She stated that T.M.D. and his mother introduced her to methamphetamine. She and T.M.D. used drugs when the children were in the house, but not in the same room. In 2015, the children were removed for one night after allegations that the children were being cared for by T.M.D. and his mother who were using drugs. R.A.M. worked family based services through the Department including obtaining employment and a stable home, submitting to drug tests, and providing a safe environment. Although T.M.D. was given the same options, he did not work services. He denied that allegation, stating that he completed all services.

Further, for about six months in 2017, T.M.D. kept the children because R.A.M. was having mental health problems and did not believe that she was suitable to care for the children. At that time, R.A.M. was not on medications for her diagnosed mental health illnesses including bipolar disorder, mood swings, and post traumatic stress disorder (PTSD). She also attempted to harm or kill herself in the past. She stated that T.M.D. was "clean" at that time. During that six months, R.A.M. went to drug rehabilitation for ten days and decided to get her life in order. Soon afterwards, on November 3, 2017, T.M.D.'s girlfriend contacted her, stating that they had been "kicked out" of her house and needed a place for the children to stay. She agreed and T.M.D. brought the children to her. R.A.M. received a telephone call later that same day, informing her that T.M.D. was in jail.

R.A.M. believed it was in the children's best interest to live with their foster family and planned to voluntarily relinquish her parental rights to the children if T.M.D.'s parental rights are terminated. The children are in a very stable environment, are thriving, and are able to benefit in ways that she cannot provide such as extracurricular activities.

LaKendra Watts, a conservatorship specialist with the Department, testified that on the day of the adversary hearing, she gave T.M.D. her card that included her cellular phone number on it with voicemail. T.M.D. did not attend the family group conference on May 31 because he was incarcerated in Shelby County. In June 2018, Watts spoke to T.M.D. on the telephone and went through the list of services that he would need to complete. She also explained that T.M.D. needed to submit to drug testing before visitations could be scheduled. Watts informed T.M.D. that any missed drug test counted as a positive drug test. T.M.D.'s May 8, 2018, hair follicle drug test was positive for marijuana, amphetamine, and methamphetamine. His urinalysis was positive for marijuana. More than three months later, in September 2018, his drug tests were negative and he was allowed visitation with his children.

Watts gave T.M.D. a copy of his service plan on July 24, 2018, when he was at the Nacogdoches County Jail. In addition to drug testing, T.M.D. was required to have an evaluation through the Alcohol and Drug Abuse Council (ADAC) and follow all recommendations, have a psychosocial assessment and follow all recommendations, seek mental health services through the Burke Center, and obtain a stable home and employment. ADAC recommended that T.M.D. attend outpatient rehabilitation service, but he did not successfully complete those services. The psychosocial recommended that T.M.D. receive a full psychological evaluation, but he did not show up for two scheduled appointments. His home consists of living at random friends' houses. Although T.M.D. said he worked, Watts never received a check stub as proof of employment. T.M.D. failed to submit to drug testing five times and other times, he would ask to drug test. However, the tests must be random. T.M.D. visited his children once and he had the opportunity for as many as twenty visitations. During T.M.D.'s sole two hour visitation with his children on October 1, 2018, he arrived ten minutes late. He left forty-five minutes prior to the visitation ending. He sent the children one video, for a total of two contacts with the children in one year. T.M.D. has not demonstrated an ability to provide the children with a safe environment.

Watts believed that T.M.D. engaged in conduct, or knowingly placed the children with persons who engaged in conduct, that endangered the physical or emotional well being of the children because he used drugs, specifically methamphetamine that is transferable to the children through skin-to-skin contact, knew R.A.M. used drugs, and subjected the children to his criminal activity and other violent people. She also believed it was in the children's best interest for

3

T.M.D.'s parental rights to be terminated because the children are part of a stable family who love them.

T.M.D. testified he used methamphetamine since 2012. He and R.A.M. stopped using drugs after the first baby's birth. In four to five months, however, he began using drugs again. T.M.D. used drugs, including methamphetamine, in the house, but not in the same room as the children. He did not realize that he exposed the children each time he used methamphetamine and touched his children. According to T.M.D., he stopped using methamphetamine and began using again about three to four times. He had been clean four to five months at the time of trial.

T.M.D.'s criminal history since 2015 includes convictions for bail jumping, two assault causeing bodily injury offenses, two unlawful restraint offenses, possession of marijuana, and theft. Since 2012, he was arrested for soliciting charitable funds without permission, having an open container, and not having a driver's license at least five times. He admitted being in the Nacogdoches County Jail approximately fifteen times since 2012. T.M.D. is currently incarcerated for possession of a controlled substance, methamphetamine, bail jumping, and failure to appear. In each case, he was sentenced to two years of imprisonment, to run concurrently. While in jail, he lost his trustee status and was placed on lockdown for thirty days.

According to T.M.D., it was very hard to touch base with his caseworker, Watts. He sent text messages and contacted her by telephone. She would not return his messages or telephone calls. Watts informed him that he could not have visitation absent a clean drug test. He denied refusing to drug test, stating that he was notified at the last minute with an hour to go across town without transportation. He attended one visitation and did not attend others because he could not find transportation or was working. T.M.D. is "fine" with the children being in "limbo" if he retained his parental rights and had a chance to regain his children. He stated that the foster parents made his life a "living hell" since they came into the children's lives and have been trying to take the children away from him. When he leaves prison, T.M.D. stated that he will have a full time job and a three bedroom house.

The foster parent testified that when the children arrived in May 2018, they had nightmares, particularly K.C.D., and engaged in "very physical playing," causing bruises. All the children had counseling and after a few months, she began to see changes. The children bonded with her family quickly and her son and the children act like typical siblings. The foster family wants to adopt the children. The CASA volunteer testified that the daycare informed her the children were more

4

rested and not hungry since being in foster care. Before they were in foster care, the children came to daycare hungry, dirty, and wearing oversized clothes. Now, the children are well-adjusted, clean, and happy. The CASA volunteer believed that it was in the children's best interest for T.M.D.'s parental rights to be terminated.

At the conclusion of the trial on the merits, the jury found, by clear and convincing evidence, that the parent-child relationship between T.M.D., P.R.M.D., K.C.D., and J.M.D. should be terminated. Consequently, the trial court found, by clear and convincing evidence, that T.M.D. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsection (E)[2] of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between T.M.D. and the children is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between T.M.D., P.R.M.D., K.C.D., and J.M.D. be terminated. This appeal followed.

## ANALYSIS PURSUANT TO *ANDERS V. CALIFORNIA*

T.M.D.'s counsel filed a brief in compliance with *Anders*, stating that counsel diligently reviewed the appellate record and is of the opinion that the record reflects no reversible error and that there is no error upon which an appeal can be predicated. This court previously held that *Anders* procedures apply in parental rights termination cases when the Department moved for termination. *See In re K.S.M.*, 61 S.W.3d 632, 634 (Tex. App.—Tyler 2001, no pet.). In compliance with *Anders*, counsel's brief presents a professional evaluation of the record demonstrating why there are no reversible grounds on appeal, and referencing any grounds that might arguably support the appeal. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *Mays v. State*, 904 S.W.2d 920, 922-23 (Tex. App.—Fort Worth 1995, no pet.).

In our duties as a reviewing court, we must conduct an independent evaluation of the record to determine whether counsel is correct in determining that the appeal is frivolous. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays*, 904 S.W.2d at 923. We carefully reviewed the appellate record and counsel's brief. We find nothing in the record that might

---

[2] Section 161.001(b)(1)(E) provides that a court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent engaged in conduct, or knowingly placed the child with persons who engaged in conduct, that endangers the physical or emotional well being of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E) (West Supp. 2018).

5

arguably support the appeal.[3]  *See **Taylor v. Tex. Dep't of Protective & Regulatory Servs**., 160 S.W.3d 641, 646–47 (Tex. App.—Austin 2005, pet. denied).*

### DISPOSITION

We agree with T.M.D.'s counsel that the appeal is wholly frivolous.  In ***In re P.M.***, the Texas Supreme Court held that the right to counsel in suits seeking the termination of parental rights extends to "all proceedings in [the Texas Supreme Court], including the filing of a petition for review."  520 S.W.3d 24, 27 (Tex. 2016).  Accordingly, counsel's obligation to T.M.D. has not yet been discharged and counsel did not move to withdraw.  *See **id**.*  If T.M.D., after consulting with counsel, desires to file a petition for review, counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an ***Anders*** brief."  *See **id.*** at 27-28; *see also **A.C. v. Tex. Dep't of Family & Protective Servs.**, No. 03-16-00543-CV, 2016 WL 5874880, at \*1 n.2 (Tex. App.—Austin Oct. 5, 2016, no pet.) (mem. op.).*  We ***affirm*** the trial court's judgment.  *See* TEX. R. APP. P. 43.2.

Opinion delivered October 31, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

---

[3] In compliance with ***Kelly v. State***, counsel for T.M.D. certified that he provided him with a copy of his brief, informed him of his right to file a pro se response, and took concrete measures to facilitate his review of the appellate record.  436 S.W.3d 313, 319 (Tex. Crim. App. 2014).  T.M.D. was given time to file his own brief, but the time for filing such brief has expired and no pro se brief has been filed.



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 31, 2019**

**NO. 12-19-00224-CV**

**IN THE INTEREST OF P.R.M.D.,**
**K.C.D. AND J.M.D., CHILDREN**

Appeal from the 145th District Court

of Nacogdoches County, Texas (Tr.Ct.No. C1833748)

THIS CAUSE came to be heard on the appellate record and brief filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

By *per curiam* opinion.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*