# NO. 12-21-00118-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 420TH* |
| *M.T. & P.T.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *NACOGDOCHES COUNTY, TEXAS* |

*MEMORANDUM OPINION*
*PER CURIAM*

J.T. and T.T. appeal the termination of their parental rights. J.T.'s and T.T.'s counsel filed a brief in compliance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *Gainous v. State*, 436 S.W.2d 137 (Tex. Crim. App. 1969). We affirm.

## BACKGROUND

J.T. is the father and T.T. is the mother of M.T. and P.T. On July 29, 2020, the Department of Family and Protective Services (the Department) filed an original petition for protection of M.T. and P.T., for conservatorship, and for termination of J.T.'s and T.T.'s parental rights. The Department was appointed temporary managing conservator of the children, and the parents were granted limited access to, and possession of, the children.

At trial, neither parent appeared. The trial judge noted that on April 16, 2021, he inquired about appointing an attorney for the parents. The parents requested an appointed attorney, but neither parent contacted the court to obtain an indigency application or completed an application. Macee Skillern, the Department's caseworker, testified that the parents were in court on April 16, when the final hearing date was announced. Further, she stated that she sent J.T. and T.T. notice of the trial date and the information for them to participate by Zoom, and contacted the parents two days before trial to remind them of the hearing. According to Skillern, the parents lived approximately one and one-half miles from the courthouse, within walking distance and

1

easy access to public transportation.

Skillern testified that the Department received a referral of neglectful supervision of both children and of substance abuse by both parents. During interviews, both children reported that their parents used a "green leafy" substance in their presence. M.T. stated that he traveled with J.T. to a home where his father obtained a baggie of a "white powdery" substance. P.T. also made an outcry of domestic violence where she witnessed her father hitting her mother and pulling her mother's hair. Skillern stated that she had multiple conversations with the children regarding witnessing violence between their parents. M.T. remembered an incident in which P.T. was playing outside when he saw his father hitting his mother. M.T. went outside, brought P.T. back into the home, and hid the children in a closet to try to keep them safe. During that incident, P.T. stated that she saw her father pinning her mother against a wall by her throat and lifting her mother off the ground in a choking manner. M.T. also stated that he was hit by his father when he tried to intervene during an altercation between the parents. The parents both denied the incidents happened.

Skillern believed that the parents' drug use in the children's presence and the children's exposure to domestic violence were conditions or surroundings that endangered the children's physical or emotional well being. Further, Skillern believed that in leaving the children in these circumstances, J.T. and T.T. engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well being.

Skillern testified that a family plan of service was generated for both parents, filed with the court, and made an order of the trial court. But neither parent completed the service plan's requirement that they build a sober support group that reinforced a sober lifestyle. She stated that the parents reported that they relied heavily on J.T.'s mother for their support group. However, Skillern stated that J.T.'s mother allegedly used illegal substances in the children's home.

As part of their required service plan, the parents were obligated to complete a drug assessment with the Alcohol and Drug Abuse Council (ADAC) and follow all recommendations. Skillern stated that T.T. completed an initial ADAC drug assessment and was referred to outpatient services. After receiving outpatient services, Skillern stated that T.T. again tested positive for methamphetamine. After Skillern asked T.T. to complete a second ADAC assessment, the assessment recommended T.T. complete an inpatient program. T.T. began

receiving services in an inpatient program on June 21, 2021, and stopped receiving services on June 29. Skillern stated that T.T. was unsuccessfully discharged from the inpatient program because she did not want to complete the program. According to Skillern, J.T. completed an ADAC assessment and was referred for inpatient services. However, as recently as June 2021, J.T. told Skillern and the CASA volunteer that he did not believe he needed inpatient services and was not going to complete such services. Skillern stated that J.T. reported that he needed to take care of his ill mother.

Further, the service plan required both parents to submit to random drug testing. Skillern stated that neither parent tested regularly when requested by the Department even though she explained that failure to test when requested counted as a positive drug test. J.T. failed to test when requested over twenty times, and T.T. failed to test when requested over fifteen times. On April 16, 2021, both parents were ordered to submit to drug testing after a court hearing but did not appear as ordered. Skillern testified that on April 20, J.T.'s hair follicle test was positive for methamphetamine metabolite. On May 20, T.T.'s urinalysis was positive for marijuana and methamphetamine. According to Skillern, J.T. and T.T. failed to complete a court ordered drug substance abuse program, and both parents used controlled substances after that date and in a manner that endangered the health or safety of their children.

Skillern testified that both parents were required by their service plan to participate in counseling to learn the signs of domestic violence and its impact on children. They were referred to Crossover Counseling but failed to participate in domestic violence counseling. Skillern stated that she spoke to T.T. alone regarding the domestic violence in the home and offered to assist her if she needed help to leave a dangerous situation. However, T.T. told Skillern that she did not believe she was in any danger or in a domestic violence relationship. J.T. was required to complete a Batterer's Intervention Prevention Program (BIPP) as part of his service plan to address domestic violence and its affect on the children's development. He failed to do so.

Both parents were required to complete a psychosocial assessment as part of the service plan and to follow all recommendations. Skillern stated that neither parent completed a psychosocial assessment even though the Department referred them to a psychologist's office three separate times. They scheduled a fourth appointment at their own expense but failed to appear. According to Skillern, J.T. and T.T. did not successfully complete any of the services on

their service plan.

Skillern testified that the children were removed once before, in 2015, based on M.T. obtaining a shotgun in the house and shooting it twice. That investigation found that the parents were under the influence of methamphetamine. According to Skillern, M.T. and P.T. do not believe that their parents would be able to keep them safe, and M.T. expressed fear of entering foster care again. She stated that neither child wanted to return home, particularly M.T., or be with relatives who they do not believe can keep them safe. Both children have told their parents that they did not feel comfortable returning home nor is either child comfortable participating in Zoom calls with their parents. Skillern testified that both children would like to stay in foster care until they could find a family that would offer them a safe and appropriate home. The children have a strong bond even though they are in separate foster homes due to M.T.'s behavioral problems.

Skillern believed that it was in the children's best interest for J.T.'s and T.T.'s parental rights to be terminated. She stated that after almost one year, the parents failed to show that they are protective towards the children and failed to address the issues that created the situation leading to the Department's involvement. The CASA volunteer and the children's attorney ad litem both recommended that J.T.'s and T.T.'s parental rights be terminated.

At the conclusion of a bench trial, the trial court found by clear and convincing evidence that J.T. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D), (E), (O), and (P) of Texas Family Code Section 161.001(b)(1). The trial court also found by clear and convincing evidence that termination of the parent-child relationship between J.T., M.T., and P.T. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between J.T., M.T., and P.T. be terminated.

The trial court also found by clear and convincing evidence that T.T. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), (O), and (P) of Section 161.001(b)(1). The trial court found by clear and convincing evidence that termination of the parent-child relationship between T.T., M.T., and P.T. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between T.T., M.T., and P.T. be terminated. This appeal followed.

J.T.'s and T.T.'s counsel filed a brief in compliance with *Anders*, stating that counsel diligently reviewed the appellate record and is of the opinion that the record reflects no reversible error and that there is no error upon which an appeal can be predicated. This court previously held that *Anders* procedures apply in parental rights termination cases when the Department moved for termination. *See In re K.S.M.*, 61 S.W.3d 632, 634 (Tex. App.—Tyler 2001, no pet.). In compliance with *Anders*, counsel's brief presents a professional evaluation of the record demonstrating why there are no reversible grounds on appeal, and referencing any grounds that might arguably support the appeal. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *Mays v. State*, 904 S.W.2d 920, 922-23 (Tex. App.—Fort Worth 1995, no pet.).

In our duties as a reviewing court, we must conduct an independent evaluation of the record to determine whether counsel is correct in determining that the appeal is frivolous. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays*, 904 S.W.2d at 923. We carefully reviewed the appellate record and counsel's brief. We find nothing in the record that might arguably support the appeal.[1] *See Taylor v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646–47 (Tex. App.—Austin 2005, pet. denied).

## DISPOSITION

We agree with J.T.'s and T.T.'s counsel that the appeal is wholly frivolous. Counsel for J.T. and T.T. has moved to withdraw. In *In re P.M.*, the Texas Supreme Court held that the right to counsel in suits seeking the termination of parental rights extends to "all proceedings in [the Texas Supreme Court], including the filing of a petition for review." 520 S.W.3d 24, 27 (Tex. 2016). Accordingly, counsel's obligation to J.T. and T.T. has not yet been discharged. *See id*. If J.T. and T.T., after consulting with counsel, desire to file a petition for review, counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *See id.* at 27-28; *see also A.C. v. Tex. Dep't of Family & Protective Servs.*, No. 03-16-00543-CV, 2016 WL 5874880, at *1 n.2 (Tex. App.—Austin Oct. 5, 2016, no pet.) (mem. op.). Accordingly, we **deny** counsel's motion to withdraw and we **affirm** the trial court's

---

[1] In compliance with *Kelly v. State*, counsel for J.T. and T.T. certified that he provided them with a copy of his brief, informed them of their right to file a pro se response, and took concrete measures to facilitate their review of the appellate record. 436 S.W.3d 313, 319 (Tex. Crim. App. 2014). J.T. and T.T. were given time to file their own brief, but the time for filing such brief has expired and no pro se brief has been filed.

judgment.  *See* TEX. R. APP. P. 43.2.

Opinion delivered December 21, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

DECEMBER 21, 2021

NO. 12-21-00118-CV

IN THE INTEREST OF M.T. & P.T., CHILDREN

Appeal from the 420th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C2035889)

THIS CAUSE came to be heard on the appellate record and brief filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

By *per curiam* opinion.
*Panel consisted of Worthen, C.J., Hoyle, J. and, Neeley, J.*