NO. 12-24-00268-CV

IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| *M.H., J.C., B.K., J.C., P.K. & K.C.,* | § | *COUNTY COURT AT LAW* |
| *CHILDREN* | § | *VAN ZANDT COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

K.O. and J.K. (Appellants) appeal the termination of their parental rights to B.N.K. and P.K. Appellants' respective counsel filed briefs in compliance with ***Anders v. California***, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) and ***Gainous v. State***, 436 S.W.2d 137 (Tex. Crim. App. 1969). We affirm.

### BACKGROUND

K.O. (Mother) is the mother of B.N.K. and P.K., and J.K. (Father) is their father.[1] This matter began in November 2022 as a Family Based Safety Services case after the Department of Family and Protective Services (the Department) received an intake alleging domestic violence between Mother and Father.

On December 6, 2022, the Department caseworker met with Mother to perform drug testing and discuss the case. Father was not present because he was "in custody" for family violence and unlawful carrying of a weapon. Father attended the following meeting in January 2023, at which he reluctantly agreed to submit to drug testing and anger management counseling and signed a Family Action Plan, including a condition that he avoid verbal or physical violence

---

[1] K.O. is the mother of five other children, one of whom she shares with J.K. However, in this proceeding, only the termination of Mother's and Father's parental rights to B.N.K. and P.K. are at issue.

against Mother. Following Father's positive urinalysis test for marijuana in February 2023, Mother and Father signed a new Family Action Plan requiring that Father not be left unsupervised with the children. Father subsequently tested positive for marijuana in a hair follicle test.

On March 23, the Department received a new intake alleging that Father broke down the door to the home and committed domestic violence against Mother in the presence of at least two children. The children's caseworker visited unannounced that afternoon and upon arrival witnessed Father driving Mother's car with the children inside and no other adult present. Mother denied the domestic violence incident with Father. On March 29, Mother tested positive for methamphetamine. The next day, the Department filed an original petition for protection of a child, for conservatorship, and for termination in suit affecting the parent-child relationship. The Department was appointed temporary managing conservator of the children, and Appellants were appointed possessory conservators of the children with limited supervised visitation privileges.

Mother generally complied with the family service plan and tested negative for illegal substances. Father neither attended the family group conference nor signed the family service plan and was generally noncompliant with said plan. In a status report filed December 15, the Department noted its concern that Mother was still in contact with Father. On January 19, 2024, Mother entered into a settlement agreement with the Department wherein the children would be returned to her care if (in relevant part) she refrained from any contact with Father and kept the children away from unsafe individuals and situations.

On May 13, the Smith County Sheriff's Office received a report that Father committed domestic violence against Mother using a machete while at least three children (not including B.N.K. and P.K.) were present in the home. The police report indicates that Father was present in the home with Mother's permission, which violated Mother's settlement agreement with the Department. Pursuant to that agreement, the Department then sought termination of all parental rights. The trial court excused the Department from its order to mediate with Father, and mediation proceeded between the Department and Mother, during which the parties reached a settlement agreement regarding B.N.K. and P.K. Specifically, Mother received one visit per quarter with the children in exchange for voluntarily relinquishing her parental rights.

On August 14, the trial court held a bench trial at which Lilia Loya, the children's conservatorship worker, testified that at the outset of the case, both Mother and Father tested

positive for methamphetamine, while Father also tested positive for PCP. She stated that Mother participated in services with the Department, and that there was previously a plan for reunification. However, the plan did not come to fruition because of the May 13 "extreme incident" of domestic violence between Mother and Father, which occurred while some of the children were present. During Father's incarceration following this incident, Mother communicated with him multiple times each day and provided him money. Father refused to sign the family plan of service, failed to participate in any services with the Department during the case, refused to submit to drug tests, and continued to engage in conduct dangerous to the children. Moreover, Father never visited or maintained any contact with the children during the case. Loya stated that B.N.K. and P.K. were doing well in their foster placement, which had the potential to become permanent. The children's paternal grandmother initially came forward as a potential placement but did not return the Department's phone calls or participate in a home study.

Father testified that he should not be involved in this case because "this case is all about [me], it's not about the kids," and "I'm not a child." He stated that he attended "a couple" therapy sessions over the phone and submitted to one drug test but alleged that those actions were "all [the Department] requested of me." He further stated that he never received a court order requiring him to work any services. Pertaining to the domestic violence allegations, Father admitted breaking down the door to the home but denied committing domestic violence against Mother. He stated that he pleaded "guilty" to a charge of class A misdemeanor assault on a family member (specifically his uncle) in June of 2023, although he maintained his innocence. Father also affirmed his current incarceration for alleged domestic violence, but denied having a history of violence.

Mother testified that in May, Father entered the home against her will (rather than with her permission as the police report indicated). She testified to completing all the services ordered by the court and attending classes and counseling related to her experience with domestic violence. She did not want to relinquish her parental rights to B.N.K. and P.K. but felt as though it was a painful decision she "had to" make on the day of mediation. Mother agreed that the children's foster placement was a great home and that the foster family would take good care of the children, but she wished she could revoke her agreement to relinquish her parental rights.

3

At the conclusion of trial, the trial court found, by clear and convincing evidence, that Father knowingly engaged in conduct that endangered the children's physical or emotional wellbeing, constructively abandoned the children, and failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of the children. Additionally, the trial court found by clear and convincing evidence that Mother executed an affidavit of voluntary relinquishment. Finally, the trial court found by clear and convincing evidence that termination is in the best interest of the children. Based on these findings, the trial court ordered that the parent-child relationship between Mother and Father, respectively, and B.N.K. and P.K. be terminated. This appeal followed.

## ANALYSIS PURSUANT TO *ANDERS V. CALIFORNIA*

Appellants' respective counsel filed separate briefs in compliance with *Anders*, each stating that the attorney diligently reviewed the appellate record and is of the opinion that the record reflects no reversible error and that there is no error upon which an appeal can be predicated. This Court previously held that *Anders* procedures apply in parental rights termination cases when the Department has moved for termination. *See In re K.S.M.*, 61 S.W.3d 632, 634 (Tex. App.—Tyler 2001, no pet.). In compliance with *Anders*, counsel's respective briefs present a professional evaluation of the record demonstrating why there are no reversible grounds on appeal and referencing any grounds that might arguably support the appeal. *See Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *Mays v. State*, 904 S.W.2d 920, 922-23 (Tex. App.—Fort Worth 1995, no pet.).

As a reviewing court, we must conduct an independent evaluation of the record to determine whether each Appellant's counsel is correct in concluding that the appeal is frivolous. *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *Mays*, 904 S.W.2d at 923. We carefully reviewed the appellate record and counsel's briefs. We find nothing in the record that might arguably support the appeal.[2] *See Taylor v. Tex. Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646-47 (Tex. App.—Austin 2005, pet. denied).

---

[2] Appellants' respective counsel each certified that they provided Appellants with a copy of the brief, informed Appellants that they had the right to file their own briefs, and took concrete measures to facilitate Appellants' review of the record. *See Kelly v. State*, 436 S.W.3d 313, 319 (Tex. Crim. App. 2014); *In the Matter of C.F.*, No. 03-18-00008-CV, 2018 WL 2750007, at *1 (Tex. App.—Austin June 8, 2018, no pet.) (mem. op.). Appellants were given the time to file their own briefs, but the time for filing such a brief expired, and we have not received any pro se briefs.

## DISPOSITION

We agree with appellate counsel that the appeal is wholly frivolous.[3]  Accordingly, we *affirm* the trial court's judgment.  *See* TEX. R. APP. P. 43.2.

BRIAN HOYLE
Justice

Opinion delivered November 13, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[3] After filing an *Anders* brief, Appellants' respective attorneys each filed a motion to withdraw. However, counsels' obligations to the Appellants have not yet been discharged.  *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (holding that the right to counsel in suits seeking termination of parental rights extends to "all proceedings in [the Texas Supreme Court], including the filing of a petition for review.").  If Appellants, after consulting with counsel, desire to file a petition for review, counsel should timely file with the Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *Id.* at 27-28; *see A.C. v. Tex. Dep't of Family & Protective Servs.*, No. 03-16-00543-CV, 2016 WL 5874880, at *1 n.2 (Tex. App.—Austin Oct. 5, 2016, no pet.) (mem. op.).



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 13, 2024**

**NO. 12-24-00268-CV**

**IN THE INTEREST OF M.H., J.C., B.K., J.C., P.K. & K.C., CHILDREN**

Appeal from the County Court at Law
of Van Zandt County, Texas (Tr.Ct.No. FM23-00127)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*